# Richmond

## W. T. Crosswhite, Administrator of the Estate of Jacob M. Faulkner, Deceased v. Southern Railway Company.

January 18, 1943.

Record No. 2607.

Present, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Jones & Woodward*, for the plaintiff in error.

*Thomas B. Gay, Robert L. Pennington* and *Wirt P. Marks*, Jr., for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

W. T. Crosswhite, administrator of the estate of Jacob M. Faulkner, deceased, brought this action against the Southern Railway Company, an interstate commerce carrier, under the Federal Employers' Liability Act (45 U. S. C. A.

sections 51, *et seq.*), to recover damages for injuries received which resulted in the death of Jacob M. Faulkner while he was employed as a locomotive engineer of the defendant, the cause of said injuries being the alleged violation by the defendant of the Boiler Inspection Act of 1924 (U. S. C. A. Title 45, section 23). The plaintiff seeks to reverse the action of the trial court in setting aside a verdict of the jury in his favor for $5,000 and entering judgment for the defendant.

The Boiler Inspection Act, in part, provides:

"It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, * * * ."

Under the Federal Employers' Liability Act, it is further provided that the employee protected thereby shall not, if injured or killed, be held to have been guilty of contributory negligence or to have assumed the risk of his employment "in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." U. S. C. A. Title 45, sections 53 and 54.

It is agreed that the sole question for our determination is whether there was evidence which would justify a jury in finding that the steam relief valves on the defendant's engine were so located, constructed, installed or exposed as to be unnecessarily dangerous to life and limb.

This brings us to a consideration of the evidence.

Jacob M. Faulkner was a competent and experienced locomotive engineer. At the time of his injury he was sixty-five years old, and had worked for the Southern Railway Company for fifty-two years.

On the morning of November 17th, 1939, as engineer, he was operating the defendant's Mallet locomotive numbered 4026, pulling a freight train between Appalachia, Virginia,

and Bristol, Virginia. The train stopped at Glenita, Virginia, about one o'clock a. m., on November 18th, to take on water. A leakage of steam from the front of the engine had been observed as it approached Glenita. When the train stopped to take on water, Faulkner got out of the front window of his cab onto the right side running board of the engine with his wrench and torch. He walked down that running board to the front of the engine, then turned to the front of the engine, and was not seen again until he had been injured. A minute or two later, he came around the right front of the engine, walking on the ground, with his pants rolled above his knee and his leg badly scalded. He told the brakeman of his train "I have scalded my leg. I slipped and caught my pant leg over this relief valve and scalded my leg." He also said he had been in front of the engine tightening a nut on the valve. He got up in the cab without assistance, received some emergency treatment, and then ran the engine to Bristol.

· The leakage of steam observed by the engineer came from the terminal check valves at the right front of the engine near to and a short distance above the level of the right side running board. There are terminal valves on each front side of the engine and the purpose of each is to build up and assure sufficient oil pressure to overcome the steam pressure of the cylinders and thus insure lubrication of the sliding cylinder valve.

There are two relief valves, one on each front side of the base of the engine of the locomotive, located in an open pit behind the headlight and about three inches below the platform upon which the headlight stands. This latter platform provides a walk both in front of and behind the headlight, the pit in which the relief valves are located being next to the after platform. The valves are from ten to eighteen inches distant from the flat surface of the platform. In each relief valve, the diameter of which is about four or five inches across the top, there is a stem protruding from the valve sleeve. The purpose of the valve is to allow air to be drawn into the cylinder while the

engine is coasting with the steam turned off, so as to relieve the vacuum and prevent excessive wear and pounding of the cylinder. When the throttle is opened, steam from the cylinder closes the relief valve, pushing the valve stem up so that it protrudes beyond the sleeve. When the throttle is closed and the steam pressure is relieved, the weight of the valve causes it to drop and open, so that the steam may escape, the steam being admitted through holes at the base of the valve sleeve. A blow from a hammer or other pressure may also release the steam when it is desired to work on the valves or cylinders.

The photographic exhibits filed with the evidence clearly indicates the valves and their location.

Upon Faulkner's arrival at the railroad yards at Bristol, he was met by J. L. Cantwell, a master mechanic, employed in the defendant's shop. Upon being asked by Cantwell what happened to him, he replied, "I burned my leg." When Cantwell walked up to the pilot beam of the engine, Faulkner said, "No use getting up there. Nothing wrong with the engine. I stepped on the relief valve."

Faulkner then went home, and secured the services of physicians. He subsequently died on November 24, 1939, from his injury, complicated by certain pre-existing diseases of his heart and kidneys. It is not questioned that his burns were the proximate cause of his death.

An immediate examination of the engine disclosed that the leakage of steam observed by the engineer near Glenita was caused by a broken pipe leading from the right front cylinder to the right front terminal valve. The break occurred where the pipe fits into the bottom of the terminal valve. There was an apparent fresh scar or mark on a nut of that valve.

Engine No. 4026 is a large, massive Mallet locomotive, ninety-seven feet in over-all length from pilot to rear tender. It was designed and built by the Baldwin Locomotive Company, one of the largest, if not the largest, designers and builders of locomotives in this country. Other locomotives of the same type and construction were bought by the

defendant from this same company about sixteen years ago, and have since been in constant use. Engine No. 4026 had been operated over 400,000 engine miles. Faulkner had operated it during many of these miles and he regarded it as his own engine, showing resentment if the master mechanic took it away from him.

Locomotives of other types and construction have different types of relief valves, located at different points, depending upon the design and construction; but relief valves of the type with which engine No. 4026 was equipped, and with which numerous other engines of like type and construction purchased and used by the defendant and other railroads were equipped, were standard equipment, and have been in general use since 1912. It was recognized equipment, which was regularly inspected, without criticism, nearly every thirty days by Federal inspectors under the Boiler Inspection Act.

Witnesses qualified to speak from long experience, master mechanics, shop foremen, inspectors, engineers and firemen, specialists in the repair, maintenance, and operation of railroad locomotives testified that there was no safer place for the location of the relief valves upon this type of engine than in the depressed area in front of the boiler and behind the headlight. In fact, no safer place was suggested by the plaintiff. They further agreed that the stem on the relief valve was very necessary to release steam trapped in the cylinders, and that a wire cage or bar over these valves would not promote safety; but, on the contrary, would serve as an invitation to trainmen to step on them and stand in a position over them where they would be burned by steam emitted from the valves when in operation, and that their use with such cage or bar would be dangerous.

The evidence goes further to show that there was no necessity for Faulkner to leave the running board on the side of the engine and get down on the pilot beam, in order to repair the broken line leading to the terminal valve, and that there was ample space between the front of the headlight and behind the headlight for the engineer to stand or

pass without stepping into the depression in which the relief valve was located.

All of the witnesses for both the plaintiff and defendant, some of whom had been in railroad service for more than thirty years, and who were familiar with the construction and location of the relief valves in question, unanimously agreed that they had never heard of a single instance of a trainman or any one else stepping on or being burned by these valves.

The locomotive here involved had been inspected within twenty-four hours previous to the accident and found to be in good operating condition.

The witnesses likewise agreed that the escape of steam and the break in the terminal valve were in no way dangerous and afforded no interference with the safe and efficient operation of the engine.

The terminal valve has no connection whatever with the relief valves in their operation, and is located at a different place from that of the relief valves and it is not claimed that it caused any injury to the plaintiff's decedent.

The evidence overwhelmingly rebuts the contention of the plaintiff that the relief valves were located in a dangerous place; that the stem of the valve upon which the decedent stepped was not necessary, and that a wire cage or bar should have been placed over the valve and its stem, so that decedent could not have stepped up on it.

The evidence discloses no violation of a statutory duty required of the carrier under the Federal Boiler Inspection Act. On the other hand, it positively and affirmatively shows, without contradiction, that at the time of the injury to Faulkner, engine No. 4026 and all of its parts were "in proper condition and safe to operate in the service" to which it was put "without unnecessary peril to life or limb." As to why or how the accident occurred we have no evidence other than the statement of Faulkner, "There is nothing wrong with the engine. I stepped on the relief valve."

In *Baltimore, etc., R. Co.* v. *Groeger*, 266 U. S. 521, 45 S. Ct. 169, 69 L. Ed. 419, it is said:

"There is a multitude of mechanical questions involved in determining the proper construction, maintenance and use of the boilers, other parts of locomotives, their tenders and appurtenances, all of which are covered by the Boiler Inspection Act, as amended. Inventions are occurring frequently, and there are many devices to accomplish the same purpose. Comparative merits as to safety or utility are most difficult to determine. It is not for the courts to lay down rules which will operate to restrict the carriers in their choice of mechanical means by which their locomotives, boilers, engine tenders and appurtenances are to be kept in proper condition. Nor are such matters to be left to the varying and uncertain opinions and verdicts of juries. * * * "

See also *Ford* v. *McAdoo*, 231 N. Y. 155, 131 N. E. 874 and *Fredericks* v. *Erie R. Co.*, 36 F. (2d) 716.

"An employee cannot recover for a violation of the statutory duty to provide safety appliances, such as the Boiler Inspection Act requires, unless the failure to comply with the statute is a proximate cause of the accident which results in his injury; if it merely creates a condition or situation in which the accident happens from other causes, there is no liability. * * * " *Anderson* v. *Baltimore, etc., R. Co.*, 89 F. (2d) 629, which is the same case subsequently reported in 96 F. (2d) 796.

A carrier, which has turned over to an engineer a locomotive engine, boiler, and appurtenances in proper condition and safe to operate, is not an insurer of the employee's safety and called upon to anticipate every possible accident. The operation of a railroad is necessarily attended by some danger and it is impossible to eliminate all of that danger. In order to recover under the Federal Acts, he must show a violation thereof. *Virginian R. Co.* v. *Andrews' Adm'x*, 118 Va. 482, 87 S. E. 577.

There was no conflict in the testimony which required action by the jury. The trial court was correct in holding that it should have sustained a motion to strike the evidence at the conclusion of all the evidence. It, therefore, did not

err in setting aside the verdict of the jury and entering a final judgment for the defendant. That judgment is affirmed.

*Affirmed.*