## Staunton

### M. Etta Baecher v. Dana Ann McFarland, An Infant, Etc.

September 6, 1944.

Record No. 2805.

Present, All the Justices.

The opinion states the case.

*James G. Martin & Son*, for the plaintiff in error.

*William G. Maupin*, for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This case grows out of an accident which happened on the sixth day of November, 1940 in the city of Norfolk, Virginia. Mrs. M. Etta Baecher, now deceased, owned a tract of land containing 25 acres which is adjacent to a suburban development called "Winona". Mrs. Baecher's home is located on this acreage. The entrance to her home is just off a street called Ashland Circle. The road to her premises is connected with this street and this was made possible by the purchase of a lot, which is now included in the 25 acres, a portion of which is taken up by the approach to Mrs. Baecher's entrance, which is a private way and

which, at the time of the accident, was designated as "Baecher Road, Private".

The Baecher acreage is enclosed and where one enters it by the private road extended from Ashland Circle, there are two gates, a large one for vehicles and a small one for pedestrians. The gateways are built into and constitute a part of a front enclosure, called a "stock fence", which is constructed of wire four feet high and over the top are strung three strands of ordinary barbed wire. This fence had been standing for many years prior to the time of the accident. The barbed wire was made a part of it to protect the property and livestock thereon, particularly sheep, from the ravages of dogs. The posts put in the ground for the purpose of hanging the gate or gates, were supported by pieces of scantling attached to the fence and extending obliquely to the posts.

On the day mentioned, Dana Ann McFarland, a child five years and some months old, who was visiting her grandmother who lived very near the Baecher property and nearer the private entrance thereto, was attracted by a horse running loose on the Baecher acreage. She climbed up the fence by means of one of the stays or scantling supports, presumably that she might have a better view of the horse. Her grandmother had gone out in the backyard with her to do some chores and the weather being cold, called hurriedly to her little granddaughter to come along indoors with her. The little girl jumped and in some way, not made very clear by the evidence, she came in contact with a barb of the wire which tore an ugly scar in her face.

Suit was brought for the child against Mrs. Baecher alleging negligence in having and maintaining a dangerous instrumentality within reach of children, which would likely attract and injure them. A jury rendered a verdict in favor of the plaintiff for $500 which was confirmed by the court. The plaintiff, to further establish her case, introduced and relied upon two ordinances of the city of Norfolk, which are: Section 94:

"No barbed wire shall be used for enclosing any lot or lots within the city of Norfolk.

"A fine of $5 for each day shall be imposed for any violation of this section."

and Section 1215:

"No barbed wire fence shall be used along any public thoroughfare within the city."

We are of the opinion that neither of the ordinances applies to the situation presented. As to Section 1215, it seems plain from the photographs of the situation which were in evidence that the offending fence is not along any public thoroughfare within the city. It is urged by the plaintiff that the public used the unpaved and extended way from Ashland Circle to Mrs. Baecher's entrance and that such use was permitted and acquiesced in by the owner. But even so, we do not think that the premises come within the meaning and intendment of the statute. Much the same may be said as to the application of Section 94. Manifestly, it was never intended to apply to a case in which the owner constructed a fence wholly on his property, and not contiguous to that of any other land owner. As well say, that the owner of acreage which is included within the limits of the city cannot erect a wire pen for the enclosure and protection of animals and string over the enclosure strands of barbed wire. Surely there could be no such legal inhibition.

But if the ordinances did apply, it, in our opinion, would not be conclusive of the case. We have repeatedly held that the violation of a statute or an ordinance does not make the violator guilty of negligence which will support a recovery for damages unless the violation is the proximate cause of the injury.

See *Bassett & Co.* v. *Wood*, 146 Va. 654, 132 S. E. 700; *Shoemaker* v. *Andrews*, 154 Va. 170, 152 S. E. 370; *Hubbard* v. *Murray*, 173 Va. 448, 3 S. E. (2d) 397.

It is true that the court has said that, whether or not there is a direct causal connection, other than the mere violation of the ordinance, between the prohibited thing and the injury, is usually a question for the jury. Here, how-

ever, the direct causal connection between the presence of the barbed wire and the injury is patently lacking. This case comes under the influence of the case of *Crosswhite* v. *Southern R. Co.*, 181 Va. 40, 23 S. E. (2d) 777, where this quotation was approvingly cited:

"An employee cannot recover for a violation of the statutory duty to provide safety appliances, such as the Boiler Inspection Act requires, unless the failure to comply with the statute is a proximate cause of the accident which results in his injury; as it merely creates a condition or situation in which the accident happens from other causes, there is no liability. * * * * *Ford* v. *McAdoo*, 231 N. Y. 155, 131 N. E. 874; *Fredericks* v. *Erie R. Co.*, 36 F. (2d) 716; *Anderson* v. *Baltimore, etc., R. Co.*, 89 F. (2d) 629.

To our minds the fence with its barbed wire merely created a condition or situation, which had existed for many years, which the child used, unwittingly, resulting in the accident. She was not an invitee, she was a trespasser. There is a line of cases decided by this court which involve the careless disposition of a bright, shiny thing, as a dynamite cap, or a charged electric wire which by their very nature attract children, and which are highly dangerous and one who is the cause of their presence, where they ought not to be, is liable for injuries to children on account of them. We think a barbed wire fence or a fence with a barbed wire strung over the top of it is not such an instrumentality.

The case of *Lunsford* v. *Colonial Coal, etc., Co.*, 115 Va. 346, 79 S. E. 348, is very much in point. There the offending instrumentality was an electric wire which was strung along motor poles and used to supply light to the coal company's barn and one of its tenant houses. There was a motor track in front of the dwellings of persons who were in the employ of the company. There was some space between the dwellings and the motor track which the children of these families used for a playground. There was a pathway leading from the dwellings across the track to the post office and a commissary. In the opinion, this was said:

"Shortly before the casualty, which caused the child's death two days later, the wire broke at a point five feet from the path. The details of the accident may best be told in the language of an eye witness, Mrs. Farbush, who says: 'I saw the little boy, the brother of May, take hold of the wire and put the end against the track and it made a flash. I supposed at the time they had powder there. The little girl then took hold of the wire and stuck it down and there came a flash and set the little girl's clothes on fire. The boy was about six years old.'"

It appeared that the children did not have any business at the point of the accident; that they were there in disobedience to the positive orders of their parents, and without the knowledge or consent of the company. They were held to be trespassers, or at most bare licensees, upon the track, and the court further held that the company did not owe them the duty of having the place of accident in safe condition. It was said that the owner of the property or place where the accident happened, must not intentionally nor willfully injure a trespasser, or licensee, but he owes him the active duty of protection, only after he knows of his danger, or might have known of it, and avoided it by the use of ordinary care and that the rule referred to applies as well to infants as to adults.

Proximate cause is quite elusive of satisfactory definition. In the case of *Spence* v. *American Oil Co.*, 171 Va. 62, 197 S. E. 468, 118 A. L. R. 1120, it was a prominent issue and there we cited a number of cases and some text law designed to make plain this troublesome doctrine, and to it we refer.

The use of barbed wire as a material in the construction of fences is so common and universal that we cannot classify it as a dangerous instrumentality. Its employment ordinarily does not suggest negligence and we do not think it does here. If by any stretch of the imagination it could be so considered, then, its connection with the accident, as a cause, is so broken and remote, and so entirely superseded by the independent act of the child as to make impossible foreseeable

sequence. The incident was a pure accident for which no one is responsible.

We have referred to the question of proximate cause as one ordinarily and usually for the jury, but courts are just as obliged to set aside verdicts of juries where they are palpably wrong as they are to sustain them when they are justified by the evidence and the law.

See *Bohlkin* v. *Portsmouth*, 146 Va. 340, 348, 131 S. E. 790, 792, 44 A. L. R. 810; *Nicholson* v. *Garland*, 156 Va. 745, 751, 158 S. E. 901.

The judgment in this case is erroneous, and it is reversed and final judgment is entered for the defendant.

*Reversed and final judgment.*

HOLT, J., dissenting.

These Norfolk ordinances are excellent examples of the valid legislative exercise of police power. Both have been violated.

Section 159 of our Constitution declares that "the exercise of the police power of the State shall never be abridged." It is an indicium of sovereignty and rests upon no Constitutional grant of power. *Richmond* v. *Virginia Ry., etc., Co.*, 141 Va. 69, 126 S. E. 353.

In *Barbier* v. *Connolly*, 113 U. S. 27, 31, 5 S. Ct. 357, 359, 28 L. Ed. 923, the court, dealing with the Fourteenth Amendment, said:

"But neither the amendment, broad and comprehensive as it is, nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education and good order of the people, and to legislate so as to increase the industries of the State, develop its resources and add to its wealth and prosperity."

It is true that to outlaw barbed wire fences may entail larger losses upon those who have enclosed larger lots with

these fences, deemed dangerous. But, as was said in *Miller v. Schoene*, 276 U. S. 272, 48 S. Ct. 246, 72 L. Ed. 568,

"* * * where the public interest is involved preferment of that interest over the property interest of the individual, to the extent even of its destruction, is one of the distinguishing characteristics of every exercise of the police power which affects property."

The size of the lot is no measure of police power. That power, like rain, falls upon the just and the unjust.

In *West Bros. Brick Co. v. Alexandria*, 169 Va. 271, 282, 192 S. E. 881, 885, so far as the record shows but one clay pit was involved.

In *Zahn v. Board of Public Works*, 274 U. S. 325, 47 S. Ct. 594, 71 L. Ed. 1074, the court said:

"The most that can be said is that whether that determination was an unreasonable, arbitrary, or unequal exercise of power is fairly debatable. In such circumstances, the settled rule of the court is that it will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining the question."

This case is cited with approval in *Martin v. Danville*, 148 Va. 247, 138 S. E. 629, and again approved in *West Bros. Brick Co. v. Alexandria, supra*, and cited also with approval in *Mumpower v. Housing Authority*, 176 Va. 426, 11 S. E. (2d) 732.

It is a gross understatement to say that the desirability of barbed wire fences in a city the size of Norfolk is debatable.

"Courts are bound to respect the acts of local legislative bodies as to what is reasonable legislation for the public welfare. This is upon the theory that the city council is in better position to understand and note the needs of the community than a reviewing court. It frequently happens that there are well grounded arguments on both sides, but a court will not inject its view except where it clearly appears that there has been an unmistakable infringement of the rights of private property or its use." *Miamisburg v. Clayman* (Ohio App.), 37 N. E. (2d) 94, citing half a page of authorities, State and Federal.

Large discretion is invested in the Legislature to determine what is public interest, and every possible presumption is to be indulged in favor of the validity of the statute. And it may enlarge the category of public nuisances. *Bowman* v. *Virginia State Entomologist*, 128 Va. 351, 105 S. E. 141, 12 A. L. R. 1121.

There can be no inclusive definition of police power, which springs from the inexhaustible source of new legislation. Whatever is within its ambit, and in response to the needs of progressive civilization, convenience and prosperity of the people at large, is not only permissible but it is to be desired.

That this wire may be the subject of police regulations is elsewhere recognized. *Stisser* v. *New York Cent., etc., R. Co.*, 32 App. Div. 98, 52 N. Y. S. 861, 862.

That it is a proper subject for police regulation further appears in Section 3538 of Michie's Code.

Wire fences long antedated barbed wire fences. Among characteristic uses to which the latter are now put is to stop a charging enemy or to hold in confinement prisoners of war. Few would hold that barbed wire fences add to the comfort of the citizens of Norfolk or to safety which an ordinary wire fence cannot provide. As its name would indicate, it is a barbarous device, intended to hurt or injure any person, animal or thing which chances to brush against it.

It was to forestall the happening of accidents like that in judgment that the ordinance in review was passed. It would be inhuman to hold that a five-year-old child can be guilty of negligence.

Plaintiff's declaration charges that the defendant negligently and unlawfully maintained this barbed wire fence and supports this charge by evidence not in dispute. The defendant in her petition for a writ of error does not contend that the ordinances relied upon are invalid. Her claim is. that they have no application.

Plaintiff in her reply brief here said:

"There can be no question that the evidence supports the finding by the jury that the barbed wire fence here was a violation of section 94 of the City Code which provides 'No barbed wire shall be used for enclosing any lot · or lots within the City of Norfolk.' "

And it is on this issue that this case turns. The judgment itself is a modest one.

Such doubt as may linger as to the law should be dispelled by an examination of the comprehensive opinion of Chief Justice Campbell in *Mumpower* v. *Housing Authority, supra,* and the authorities there cited.

These cases and the authorities upon which they rely also are important: *West Bros. Brick Co.* v. *Alexandria, supra,* and *Gorieb* v. *Fox,* 145 Va. 554, 134 S. E. 914.

It is not contended that the ordinance itself is void, and since it is valid, it should, for reasons indicated, be applied.

Cases which deal with the turntable doctrine have no application.

In *Walker* v. *Potomac, etc., R. Co.,* 105 Va. 226, 53 S. E. 113, 115 Am. St. Rep. 871, 4 L. R. A., N. S., 80, a turntable case, Judge Buchanan concludes his opinion by citing in part from what he characterizes a very able opinion by Judge Denman in *Dobbins* v. *Missouri, etc., Ry. Co.,* 91 Tex. 60, 41 S. W. 62, 66 Am. St. Rep. 856, 38 L. R. A. 573, in which attention is pointedly directed to the police power of law-making bodies:

"As a police measure the law-making power may, and doubtless should, without unduly interfering with or burdening private ownership of land, compel the inclosure of pools, etc., situated on private property in such close proximity to thickly settled places as to be unusually attractive and dangerous, and impose criminal or civil liability, or both, for failure to comply with the requirements of such law. When such a duty is imposed the courts may properly enforce it or allow damages for its breach, but not before."

And that view is approved in Restatement of the Law of Torts, section 367:

"A possessor of land who so maintains a part thereof that he knows or should know that others will reasonably believe it to be a public highway, is subject to liability for bodily harm caused by them while using such part as a highway, by his failure to exercise reasonable care to maintain it in a reasonably safe condition for travel.

"a.   One whom a possessor of land intentionally or negligently misleads into believing that part of his land is a public highway, is entitled to expect that the possessor will afford him a security similar to that which he would be entitled to expect were the land actually a highway."

City Code, section 94, declares that "No barbed wire shall be used for enclosing any lot or lots within the city of Norfolk."  We are dealing with a city lot enclosed by a barbed wire fence, and that is that.  But this is not all.

City Code, section 1215, declares that "No barbed wire fence shall be used along any public thoroughfare within the City."

·In order to ascertain whether or not a passageway is a thoroughfare it is not necessary for one to examine the records in the city hall.  It is now labeled by its owner "Baecher Road."  She thought it was a road and said so and that sign would convey to a wayfarer just the information that "Rugby Road" in Charlottesville or "Roseneath Road" in Richmond would convey.

John J. Baecher, a witness for the defendant and her son, was asked: "And anybody going down there would naturally suppose it was a street?" He answered: "Yes."

Mrs. Annie C. McFarland, a witness for the plaintiff, said that "you could not tell it from a street," and Daniel C. McFarland said "it is used as a street."  And this little five-year-old child went upon it as it would have gone upon any other road.

Both of these code sections have been violated.  The defendant's lot was enclosed by a barbed wire fence and a barbed wire fence followed a road which had every appearance of being a public thoroughfare.

The validity of these ordinances is not questioned; it is their application which is challenged.

This matter was submitted to the jury, which was told "if the jury further believes from the evidence that violation of this ordinance by the defendant proximately caused or contributed to the injury of Dana McFarland, then their verdict must be for the plaintiff, Dana McFarland." The jury and the judge each were of the opinion that causal connection had been established and are justified by the record.

On each issue we have a jury's verdict approved by a trial judge, and that, as Mr. Justice Browning recently had occasion to observe, places one in the highest position known to the law. Plainly this five-year-old child cannot be charged as a trespasser.

As I have already had occasion to point out, no turntable case in Virginia deals with injuries brought about by the violation of a valid police ordinance. They deal with attractive nuisances and not ordinances.

The substance of the situation in the instant case may, in this wise, be summarized:

When statutes, under the police power of the State, are designed to promote the safety and convenience of the people, and particularly to prevent a certain type of accident, and are ignored by one to whom they apply, if such an accident then happens due to his disregard of these statutory mandates, we have a simple case of cause and effect. Or, in legal parlance, we meet again our old friend causal connection.