## CIRCUIT COURT OF FREDERICK COUNTY

Federal Real Estate
and Investment Corp.

v.

Carl Frye's Mobile Home
and Modular Housing, Inc.

Case No. (Law) 3579

By JUDGE ROBERT K. WOLTZ

October 28, 1980

This letter opinion concerns various responsive pleadings filed by the defendants to an "Amended Motion for Judgment" allowed to be filed in this Court by the plaintiff.

Plaintiff sued the defendant corporation and Carl E. Frye individually in the Fairfax County General District Court for $2,229.50 claimed due from the defendants as a real estate brokerage commission due the plaintiff on the sale of certain real estate belonging to the defendant corporation. By order of that Court, venue was transferred to the Frederick County General District Court, where the plaintiff filed a Bill of Particulars as to his claim, and the defendants filed Grounds of Defense. Judgment in that Court was granted the plaintiff against both defendants, and they appealed to this Court.

Thereafter, the plaintiff was granted leave to file an Amended Motion for Judgment seeking the same amount

of compensatory damages for breach of contract but, in addition, alleging that the defendant corporation was "the mere alter ego" of the individual defendant, alleging fraud and seeking punitive damages therefor in the amount of $10,000.00.

The first issue to be decided, raised by the defendants' Motion to Strike, is with respect to the jurisdiction of this Court concerning the punitive damages claimed. Defendants say first that the jurisdiction of this Court is derivative from the General District Court and, as a consequence, first that the under the provisions of § 16.1-77, which confers civil jurisdiction on courts not of record, such courts are not given jurisdiction over punitive damages and as the jurisdiction of this Court is derivative from the court not of record, this Court cannot in this appealed action entertain the question of punitive damages.

This precise question with regard to punitive damages in courts not of record appears not to have been decided in this jurisdiction. A General District Court being a court of limited jurisdiction deriving all of its jurisdiction by virtue of statute cannot exercise any jurisdiction unless expressly conferred by the statute upon it. *Addison v. Salyer*, 185 Va. 644 (1946). Section 16.1-77 is the statute conferring civil jurisdiction on General District Courts, and subject to limitations on the amount in controversy it confers in pertinent part "jurisdiction of any claim to specific personal property or to any debt, fine or other money, or to damages for breach of contract or for injury done to property, real or personal, or for any injury to the person, which would be recoverable by an action at law or suit in equity." This is a very broad and general grant of jurisdiction with respect to the particular claims mentioned. The language "any claim. . . to any debt, fine or *other money*. . . which would be recoverable by action at law or suit in equity" (emphasis added) is wide enough to encompass a claim for punitive damages as there is no other language in this section which can fairly be construed to eliminate punitive damages. In addition, it would be unreasonable to believe that the legislature, in cases in which the General District Courts and the Circuit Courts have concurrent jurisdiction, could have intended that in the former courts punitive damages could not be recovered, though admittedly they could be in the latter.

The second jurisdictional attack on the Amended Motion for Judgment is that it seeks damages in excess of the $5,000.00 jurisdictional amount-in-controversy limitation imposed by § 16.1-77. *Addison, supra,* is authority that on appeal from a court not of record to a Circuit Court the jurisdiction of the latter Court is derivative, and that if the court not of record did not have jurisdiction of the subject matter then the appeal of that matter will not confer jurisdiction on the Circuit Court, even though the subject matter is something over which the Circuit Court generally does have jurisdiction. In such cases, it is as though there were nothing in the first instance to appeal to the Circuit Court.

On the same principle of derivative jurisdiction, *Stacy* v. *Mullins,* 185 Va. 837 (1946), is direct authority that on appeal of a civil action from a court not of record the plaintiff may not amend in the Circuit Court to claim an amount in excess of the jurisdiction of the court not of record. The appeal is considered a continuation of the original case, and if the General District Court did not have jurisdiction of the amount sued for, the appellate court will acquire none by the appeal. Though the trial is one *de novo,* the entire proceeding is not *de novo,* nor is there an action *de novo.* While amendments can be made in the Circuit Court so long as the jurisdictional limits of the inferior court are not exceeded and while the case is heard independent and disregardful of any judgment of the inferior court, and while the appellate court hears evidence anew and may hear new evidence, yet it is the same case, the jurisdiction of the Circuit Court to hear it being derivative from that of the court below. *Addison* and *Stacy.* Defendant's Motion to Strike is sustained on this ground.

Defendants also demur to the allegations of the Amended Motion for Judgment with respect to claim for punitive damages in this action *ex contractu.* The Demurrer is sustained on the basis of *Wright* v. *Everett,* 197 Va. 608 (1956), to the effect that punitive damages are not allowed for breach of contract, except perhaps where the breach is an independent willful tort which is well pleaded. In any event, the fraud alleged as a basis for awarding damages is alleged in such general and non-specific terms that it cannot withstand demurrer; the allegations "are too vague, indefinite and conclusory to state a cause of action." *Tuscarora* v. *B.V.A.,* 218 Va. 849 (1978).

The defendants further move to dismiss the individual defendant as a party. The plaintiff alleges that the corporate defendant owned the real estate, the sale of which gave rise to the claimed real estate commission, that the individual defendant was the president of the corporation, and that the property was conveyed by the defendant corporation. The Amended Motion for Judgment alleges certain other activities by the individual defendant which could easily have been in his capacity as agent for the corporation. With those allegations, the additional allegation that the corporation was "the mere alter ego" of the individual defendant is insufficient to attach liability to the individual. None of the other allegations are sufficient to "pierce the corporate veil" and reach the individual defendant, and this allegation alone, to use the language of *Tuscarora*, is "too vague, indefinite and conclusory." Use of a corporation so as to justify the "alter ego" allegation and the piercing of the corporate veil are matters tantamount to alleging a species of fraud, and a high degree of specificity is as a consequence required to make and retain on that basis an individual as co-defendant with a corporation. The motion to dismiss him is sustained.

### January 13, 1984

At stake in this action are the real estate commissions claimed by the plaintiff (Federal) from the Defendant (Frye). Essentially Federal claims that it rendered services under a "listing" contract with Frye to obtain a purchaser for certain of the latter's real estate and that it was the procuring cause in obtaining the purchaser to whom Frye sold the property. Frye maintains that the agreement between it and Federal constituted a "special" contract as opposed to a listing contract under which Federal failed to perform as required and so is not entitled to a commission.

Frye owned a house and lot in Clarke County which it desired to sell and had advertised for sale. An employee, duly licensed to sell real estate, of Federal saw the ads and approached Frye. As a result Frye agreed to allow Federal to try to sell the property at a sale price of $28,000.00 net to Frye. In about a month Federal found an interested purchaser and Frye and the purchaser entered into a contract of sale at a sale price of

$31,850.00 and by agreement Federal's commission set out in the contract was raised from 6% to 7%. The contract of sale provided it was contingent on the purchaser obtaining necessary financing together with other provisions, none of which were a part of the brokerage contract between Frye and Federal.

Federal assisted the purchasers in attempting to obtain financing with two or more lenders over a period of several months without success. Frye became very impatient with the failure of the sale contract to be consummated and finally took the matter into its own hands, arranging for a loan at its own bank for a portion of the purchase price and itself taking a second deed of trust to secure the remaining $6,500.00 of the purchase price and delivered a deed to the purchaser. These latter events took place without notice to Federal and without its knowledge until a month later. Frye refused the demands of Federal for payment of its commission.

The contract between Frye and Federal was for Federal to find a purchaser for the property at a sale price of $28,000.00 net to Frye, and by necessary implication a purchaser who was ready, willing and able to buy. In the Court's view it does not matter in this case whether that contract is called a "listing" contract or a "special" contract.

It is not disputed that Federal was the procuring cause in obtaining the purchaser, and contract of sale with that purchaser was entered into by Frye by which Frye was to net at least the $28,000.00. Federal has performed its brokerage contract and is entitled to its stated commission. *Reiber* v. *Duncan*, 206 Va. 657, 660 (1965), holds:

> Generally, when a real estate broker, pursuant to a valid listing agreement, procures a purchaser for a listed property ready, willing and able to buy upon the terms defined by the owner, then the agent is entitled to his commission. The fact that the sale is not consummated does not deprive the broker of the right to receive his commission unless the failure to consummate is due to some fault of the broker. [Citations omitted.]

To be entitled to the commission the broker must be the procuring cause of the sale. *Leicht-Benson, etc. Corp.* v. *Stone & Company,* 138 Va. 511, 43 A.L.R. 1100 (1924); *Wilson* v. *Schmidt and Wilson,* 184 Va. 642 (1946). Being the procuring cause is not alone always sufficient to entitle the broker to a commission. If after termination of the broker's agency, in the absence of fraud or waiver by the seller if the seller sells to one produced by the broker, the broker is not entitled to commission on the sale even though he was the procuring cause. *Ford* v. *Gibson,* 191 Va. 96 (1950). In the present case, however, all the evidence is that the contract of agency between Frye and Federal was in full force and effect at the time Frye entered contract of sale with the purchaser.

The error of Frye's position is that he confuses performance of the contract of agency with performance of the contract of sale. It is true that Federal was unable to effect necessary financing of the purchaser, and for the contract of sale to be consummated in an actual transfer of the property to the purchaser Frye itself not only had to arrange for financing with an institution but to finance a part of the purchase price on its own account. The brokerage contract placed no duty on Federal to see to the financing, though it undertook to do this, but only to find a purchaser who was ready, willing and able to purchase at the price specified.

A broker was found to be the efficient cause of completion of a transaction even though he did not participate in working out the terms of payment in *Blankenship* v. *Childress,* 183 Va. 3 (1944). There the broker, in accordance with the brokerage contract, produced a purchaser at a price of $60,000.00 to whom the seller later sold partly for cash with the balance in notes. The Court observed: "The owners clearly appropriated the benefit of the broker's service, and sought to defeat paying his commission." *Id.* at 21.

In the absence of any special provisions in the contract by which the broker is employed, the financial inability of the purchaser to perform after the broker has procured the contract for the sale of the real estate does not defeat his entitlement to a commission. *Kingsland Land Corp.* v. *Lange,* 191 Va. 256, 261 and 262 (1950). The case states as the basis for this rule that if the seller accepts the purchaser that is a determination by the seller of the purchaser's ability to perform. This is

the rule unless the seller's acceptance of the purchaser is influenced by misrepresentations of the broker as to the purchaser's ability to carry out his contract with the seller or unless the seller relied only on the broker's judgment as to the financial ability of the purchaser. There is no evidence to support a finding that the broker was guilty of any misrepresentation or fraud concerning the purchaser's ability nor any that Frye, in accepting this purchaser, relied wholly on Federal's judgment in that respect. In any event, as noted above the contract of sale between Frye and purchaser was actually consummated, albeit due to Frye's efforts.

Thus Frye's citation of *Olson* v. *Brickles*, 203 Va. 447 (1962), and *Bell* v. *Real Estate Corp.*, 206 Va. 853 (1966), concerning forfeiture of commission where the broker uses bad faith in dealing with the seller or violates his fiduciary relation to the seller is inapposite. Likewise inapposite are Frye's citation of *Campbell* v. *Sickles*, 197 Va. 298 (1955), and *Quality Home Builders* v. *Herrick*, 210 Va. 723 (1970), as in those cases the broker was denied his commission for failure to procure a purchaser on terms and conditions specified in the contract of employment between seller and broker.

The parties stipulated that there was $1,277.50 in an "escrow" account held by Federal in this transaction. Testimony of the purchasers at the trial was they had received credit for payment by them of this escrowed amount at the closing of the sale to them. Disposition of these funds either by remission of them to Frye or by application of them to Federal's claim for commission affects the amount of the judgment to be rendered. The amount of the judgment will be $2,229.50 for Federal's commission if the escrow monies are remitted to Frye, but if taken by Federal as a part of its commission the amount of the judgment will be $952.50. In either event interest thereon will run at the statutory rate from the date suit was instituted (originally in the General District Court of Fairfax County). The Court will look to counsel to make arrangements concerning disposition of the escrowed funds so that final judgment in the correct amount may be entered.

Federal also sought by an amended motion for judgment $10,000.00 in punitive damages. By previous written opinion in this case that claim was denied on the basis that the amount exceeded the jurisdictional amount of the

18

General District Court and the jurisdiction of this Court was derivative from that Court. *Addison v. Salyer*, 185 Va. 644 (1946). Claim for punitive damages is also denied on the authority of *Kamlar Corp. v. Haley*, 224 Va. 699 (1983).