## CIRCUIT COURT OF ARLINGTON COUNTY

Barbara L. Vito

v.

Klingbeil Management Group et al.

Case No. (Law) 22989

By JUDGE CHARLES H. DUFF

September 17, 1982

For decision is a Motion in limine filed by the defendants in which they seek to exclude any reference to Section 29-5.8 of the Arlington County Housing Standards Ordinance in the trial of this case. Able argument has been held on the Motion and memoranda submitted and examined.

The defendants posit three grounds upon which they assert the invalidity of the County Ordinance as establishing a duty on their part. First, they say that the Ordinance is contrary to the Virginia Residential Landlord and Tenant Act and is therefore invalid. Second, they contend that the ordinance conflicts with the Uniform Statewide Building Code. Third, that even if the Ordinance is valid, it may not be applied to create liability on the part of the landowner for the criminal acts of third parties. After careful consideration, I am of the opinion that the first two grounds asserted by the defendants must be denied and that the third ground is premature.

The applicable County Ordinance, sec. 29-5.8, was enacted January 1, 1972, as part of the Housing Standards Ordinance. It provides, in short paraphrase, that in multiple dwelling buildings leased to tenants exterior swinging doors shall be equipped with a vertical bolted

deadlock. An examination of the preamble to the Ordinance shows that the County Board found the existence within the County of dwellings which were unsafe and that such a condition affected the *health, safety, and welfare of the public*" and, further, that adequate protection of the *health, safety, and welfare of the public*" (italics mine) required the establishment and enforcement of housing standards. The language as stated above in the preamble of the Ordinance evinces the exercise of the police power to provide adequately for the safety and welfare of the general public.

The Virginia Residential Landlord and Tenant Act, section 55-248.2 et seq., was enacted in 1974. In 1977, a provision was added (55-248.13.1) enabling local governments to require deadbolt locks under certain conditions. The intent or purpose of the statute is stated in Section 55-248.3 as being, inter alia, to simplify, clarify, modernize, and revise the law governing the rental of dwelling units and the rights and obligations of landlords and tenants. . . and to establish a single body of law relating to landlord and tenant relations throughout the Commonwealth. The various Articles of the statute outline the landlord's obligations, the tenant's obligations, the remedies of both landlords and tenants and a prohibition against retaliatory conduct. The purpose of the statute in the last analysis is to establish a single body of law "relating to landlord and tenant relations throughout the Commonwealth."

Initially then, it appears that the purpose of the County Ordinance and the State statute are different. One looks primarily to the health, safety, and welfare of the general public. The other looks to more uniform laws governing the relationship between landlords and tenants.

In *King v. Arlington County*, 195 Va. 1084 (1954), it was pointed out that the mere fact that the state had made certain regulations with respect to the subject did not prohibit a locality from likewise dealing with the subject. Both the state and its local governmental agencies may have concurrent jurisdiction over the same subject matter. The opinion quotes from 37 Am. Jur., *Municipal Corporations*, Section 165, page 787, as follows:

The mere fact that the state, in the exercise of the police power, has made certain regulations does not prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two, and the requirements of the municipal bylaw are not in themselves pernicious, as being unreasonable or discriminatory, both will stand. The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith, unless the statute limits the requirement for all cases to its own prescription. Thus, where both an ordinance and a statute are prohibitory and the only difference between them is that the ordinance goes further in its prohibition, but not counter to the prohibition under the statute, and the municipality does not attempt to authorize by the ordinance what the legislature has forbidden or forbid what the legislature has expressly licensed, authorized, or required, there is nothing contradictory between the provisions of the statute and the ordinance because of which they cannot coexist and be effective. . . .

Applying these legal principles to the enactments in question it is noted that the State statute is permissive, merely authorizing local governing bodies to require deadlock bolts under certain conditions. The County Ordinance goes much further but a careful analysis reveals that it does not prohibit what the State statute has authorized. Nor does it authorize something that State law has forbidden. As was stated in *King*:

Obviously, situations may occur in urban and thickly populated communities which may permit and indeed require further local legislation not inconsistent with the provisions in the State law.

Therefore, finding no real contradiction between the statute and the ordinance, the motion must be denied as to this ground.

Regarding the assertion that the County Ordinance is contrary to the BOCA Code, I note that the deadbolt lock Section of the Code was enacted August 1, 1978. By its very terms, Section 612.5.5.1 applies to "buildings hereafter erected or converted. . ." Thus, the requirement of that Section would be inapplicable to the buildings in the present litigation.

Finally, the defendants assert that even if the Ordinance is valid it does not create an action for the damages alleged. They cite *Baecher v. McFarland*, 183 Va. 1 (1944), in support thereof. In that case the defendant landlord had violated an ordinance by stringing barbed wire across the top of a fence. The fence had existed for many years when the plaintiff, a child of five years, climbed it and in jumping off came in contact with a barb of the wire which tore her face. The then Supreme Court of Appeals reversed a plaintiff's judgment and entered final judgment for defendant, holding that there was no direct causal connection between the presence of the barbed wire and the child's injury. The fence with its barbed wire merely created a condition or situation which the child used, resulting in the accident. It was also noted that the child was not an invitee, but a trespasser.

Defendants also cite *Gulf Reston, Inc. v. Rogers*, 215 Va. 155 (1974), for the proposition that the landlord does not owe the tenant a duty of protection from an intentional, deliberate or criminal act by a third person. A careful reading of the decision would indicate that it turned on its own facts. The Court recognized, however, that several recent cases from other jurisdictions had held that a landlord's appreciation of risk and harm from foreseeable criminal activities of third persons would impose a duty to exercise care to provide adequate protection for tenants. In both cases cited on page 159 of the opinion, large apartment buildings were located where frequent robberies and rapes had been committed and such occurrences in their apartment buildings were known to the landlords. The Court in *Gulf Reston* simply observed that those cases were not controlling, obviously because of the different facts involved.

The defendants' third point, in essence, asks the Court to hold, on the pleadings and as a matter of law,

that the alleged harm to the plaintiff was not reasonably foreseeable and that there was, again as a matter of law, no proximate connection between the Ordinance violation and the harm sustained. I believe that it would be premature to grant such a motion at this stage of the proceedings. Issues of foreseeability and proximate cause are so dependent on evidence taken at trial that a decision on this aspect of the motion should be reserved until that time.

December 3, 1982

I have carefully considered the able arguments presented on both sides of the Defendants' Motion to Vacate the Jury Verdict. As to the legal issues presented with respect to the County ordinance, I adhere to the previous rulings and decline to enter judgment in the Defendants' favor.

A more serious question is presented by the Motion for a New Trial based upon the voir dire examination of the jury by Plaintiff's counsel. Counsel asked the panel if any members were employed as an insurance adjuster by an insurance company. Defense counsel promptly requested a sidebar conference and moved for a new trial on the grounds of the deliberate injection of insurance into the case. I took the motion under advisement and am now called upon to decide whether under the law the offending question should warrant such action.

Defendant relies primarily upon *Hope Windows, Inc. v. Snyder*, 208 Va. 489 (1968), where an almost identical question was asked in the presence of the jury panel. The Trial Court declined to declare a mistrial but did order a remittitur. On appeal, the then Supreme Court of Appeals reversed, holding unequivocally that the deliberate injection of insurance coverage by Plaintiff's counsel on the voir dire examination was improper and prejudicial to Defendants' right to a trial by an impartial jury.

Plaintiff's counsel strongly urges that the question was proper; that it was designed to ascertain occupations with the thought that any insurance adjusters might have experienced similar cases in their background. In short, counsel candidly concedes deliberateness of the question but asserts justification for the reasons indicated.

I have two difficulties with this position. The first is that the jurors' occupations are furnished to

counsel as part of the jury list. Any juror whose occupation was inadvertently omitted could have been asked the question without mentioning insurance. Secondly, regardless of counsel's good faith, the effect of the question was the same as if asked deliberately; namely, to suggest to the jury that the Defendants were protected by liability insurance coverage.

The following language from the *Hope Windows* case is appropriate:

> The examination should not be so limited as to impede the solicitation of information in deciding whether a juror is impartial. On the other hand, the questions asked can convey to the panel certain information that would prevent them from being impartial and may act as a sword rather than a shield. Thus the voir dire examination must be conducted with great care if its goal of obtaining impartial jurors is to be realized.

In *Langley v. Turner's Express, Inc.*, 375 F.2d 296 (4th Cir. 1967), the Court recognized that care should be exercised in questioning the jury panel as to their interest in a liability insurance company and observed that the danger to a defendant in such questioning was greater than the danger to a plaintiff. In *Lynch v. Alderton*, 124 W.Va. 446, the propounding of whether any members of the panel were officers, employees, agents or stockholders in any liability insurance company constituted reversible error where counsel did not confide to the Trial Court any situation which would warrant the question.

I am not unmindful of *Simmons v. Boyd*, 199 Va. 806 (1958), and similar decisions where the inadvertent injection of insurance coverage has been held to be harmless error particularly where it appears that substantial justice has been done in the case. However, considering the quantum of the present verdict and the entire evidence presented before the jury, I am of the opinion that the question relating to insurance on voir dire may have influenced the jury, both on the issue of liability and the amount of damages.

504

Accordingly, I feel I have no choice but to set aside the jury verdict and to award a new trial on all issues.