# CHARLESTON.

## BESSIE M. AMBROSE *v.* W. J. YOUNG

### (No. 5386)

Submitted November 10, 1925. Decided November 24, 1925.

1. MASTER AND SERVANT—*Owner of Family Automobile Liable
   for Son's Negligence.*

   Where a person allows his son, who is a member of his
   family, to drive an automobile which he maintains for the
   comfort, convenience, pleasure, entertainment and recrea-
   tion of his family, whereby the son negligently injures an-
   other in his person, the owner is liable; the son while so
   driving is acting in the furtherance of the owner's purpose,
   being thereby the servant of the owner.   (p. 455.)

   (Motor Vehicles, 28 Cyc. p. 38.)

2. HIGHWAYS—*Running Automobile at Unlawful Speed Negli-
   gence, Rendering Wrongdoer Liable for Such Injuries as
   Are Proximate Result of Illegal Speed.*

   The running of an automobile on the public highways of
   this state at an excessive rate of speed in violation of a
   statute is of itself negligence, but the wrongdoer is only
   liable for such injuries as are the proximate result of such
   illegal speed.   (p. 460.)

   (Motor Vehicles, 28 Cyc. pp. 37, 38.)

3.  TRIAL—*Testimony Volunteered by Witness That Automobile Owner Was Protected by Indemnity Insurance Held Not Reversible Error.*

Testimony volunteered by a witness in such case to the effect that the defendant was protected by indemnity insurance is not reversible error where it clearly appears that counsel for the plaintiff did not solicit such testimony and could not have anticipated the objectionable answer of the witness, and where the court instructed the jury to disregard it.   (p. 457.)

(Appeal and Error, 4 C. J. § 2974.)

4.  EVIDENCE—*Statement by Driver of Car, Before Leaving Scene of Collision, as to His Speed, Held Admissible as Res Gestae.*

In this case a declaration by the driver of the car of the defendant made on the scene of the collision within twenty minutes after the accident and before he had left the scene, that "he [Young] was driving at the rate of forty-five miles an hour when he came over Butler Hill," which was about an eighth of a mile from the place where the cars collided, is admissible in evidence as a part of the *res gestae*. (p. 458.)

(Motor Vehicles, 28 Cyc. p. 47 [Anno.]).

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Jefferson County.

Action by Bessie M. Ambrose against W. J. Young. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*H. H. Emmert,* for plaintiff in error.

*George M. Beltzhoover, Jr.,* and *Kilmer & Byrer,* for defendant in error.

WOODS, JUDGE:

The defendant prosecutes this writ of error from a judgment of the circuit court of Jefferson county entered against him for the sum of $2,000.00, for 'personal injuries sustained by the plaintiff in an automobile accident.

On the night of May 17, 1924, the plaintiff was returning home from Charles Town in a Ford touring car, which was

being driven and operated by her husband, along the historic state highway in the direction of Harper's Ferry, when the car was hit by a Hudson coach, which was being driven by one William Young, the sixteen year old son of the defendant. He was accompanied by a young lady, who was also under age. He had driven to Harper's Ferry that evening and was returning to Charles Town, where he resided with his father. The place of the accident is a few hundred feet from the foot of a four per cent grade—and on a straightaway which continues for a distance of 400 feet to the top of the hill, and approximately 1,000 feet in the other direction. The plaintiff and her husband were coming down the grade at about 15 or 20 miles per hour, on the right-hand side of the road, and claim that the Hudson car was being driven at a rapid rate of speed—according to the husband, "running around 40 miles an hour" and the wife, "hit us that quick—quick as lightning." According to Mr. Ambrose the Hudson struck the Ford "around along toward the back fender, just turned right up on end and pulled it right on over." Harry D. Miller, a mechanic, called as a witness for defendant, in testifying as to the condition of the Ford after the accident, said: "The front left fender was practically torn off. Front wheel, the axle was torn off entirely. Radius rods torn off. Front right fender battered up. *Rear left fender mashed down against the wheel in such a way that wo had to tie it up before we could move the car.* Running board mashed up—shield—windshield broken. Several other small items." On cross-examination he was asked: "If you knew that this automobile had been struck by a Hudson car coming at 40 or 50 miles an hour, car weighing 3800 lbs., could you account for the condition in which you found the car that you saw, as to the damage, general damage?" To this he answered: "Yes, sir, I believe that would pretty near do it." The Hudson after the impact, veered further to its left and ran a distance of 75 or 100 feet up the grade, smashing through a fence and knocking down a post before it finally stopped. Mr. Clipp, a garage man, another witness for defendant, testified that Mr. Young hired him to get his car in. · That he found the front end of the car through the

fence, a part of it buried in the bank; that the left front wheel was broken and the axle bent; that he had to use a crane to get the car out. Kerns, the state patrolman, was called to the scene, arriving there within fifteen minutes after the accident. He measured the width of the travelled portion of the road to be 16 feet, and testified that from indications on the road the Hudson car was some 18 inches or more over on plaintiff's side of the road when it struck the rear end of the Ford car. There is no controversy over the fact that the Hudson ran into the Ford; and no evidence that the Ford ran into the Hudson. There is, however, some controversy as to the location on the road of the point of impact between the two cars. J. W. Young testified that he was the owner of the Hudson car; that on the night of the accident that his son, James, had permission to use the car; that he maintained this car for the pleasure and convenience of himself and family; and that his son had been in the habit for some time prior to the accident of using the car by himself and in company with such friends and guests as he chose to invite to ride with him. As a result of this accident one of plaintiff's ribs was fractured and the coccyx was separated from the sacrum. She also received several bruises. Plaintiff testified that she has been a nervous wreck since the accident, and is in agony all the time.

Counsel for defendant contends in his brief that the court erred in: (1) refusing to sustain the demurrer to the declaration; (2) refusing to discharge the jury upon the testimony of witness Kerns that the defendant was insured; (3) admitting testimony of a conversation held between a witness and the driver of the car as to the speed he was driving the car; (4) giving instructions for the plaintiff; (5) refusing instructions at the request of the defendant; and (6) denying defendant a new trial.

1. Is the declaration sufficient? It is alleged that the first count is not sufficiently definite, for the reason that it does not allege that the automobile at the time of the accident was being operated upon the business of the defendant. The family doctrine with respect to the use of an automobile by a member of a family was first announced by this court

in *Beard* v. *Davis,* 86 W. Va. 437, to the effect that where
one owns and maintains it for the comfort, convenience,
pleasure and recreation of his family and instructs its man-
agement to any member thereof, such member will be re-
garded as the agent or servant of the owner, making him
liable in damages for injuries sustained by a third person
from the negligent management of such machine on the pub-
lic roads by such agent or servant. This has been followed
in *Jones* v. *Cook,* 90 W. Va. 710, and *Aggleson* v. *Kendall,*
92 W. Va. 138. The first count contains the averment that
the automobile was "maintained and furnished for the use,
comfort, convenience, pleasure, entertainment and recreation
of himself and the several members of his family, and which
said automobile the defendant permitted the several members
of his family to use, and they had been accustomed to use
the defendant's said automobile for the purpose aforesaid
whenever they, or any one of them, desired to use the said
automobile, and when the said automobile was not in actual
use by the defendant, for sometime prior to the institution
of this suit * * * and which said automobile of the defendant,
on the day and year last aforesaid, in the county aforesaid,
was then and there in the possession, care and direction of
one James Young, son of the defendant, who resided with
his father, and said automobile of the defendant was then
and there driven and operated by, the said son of the de-
fendant, over, along and upon the said public and common
highway, * * * in accordance with the custom and privilege
accorded said son by the defendant, his father, as herein-
before set forth." Then follows the allegation to the effect
that while the plaintiff was riding in the automobile of her
husband, which was being driven by him with all due care,
that the said defendant, by his son, "then and there so im-
properly, carelessly, recklessly and negligently drove and
managed the automobile of the defendant that, by and
through the improper, careless, reckless and negligent con-
duct of the defendant, by his said son, the said automobile
of the defendant then and there ran into and struck with
great force and violence upon and against the said automo-
bile of the plaintiff's husband, * * *" thereby causing the

injury complained of. These allegations are sufficient to show that in legal effect the son was upon the business of his father, the defendant. The doctrine of agency is not confined to merely commercial transactions, as shown by the cases cited, but extends to cases where the father maintains an automobile for family use, with general authority, express or implied, that it may be used for the comfort, convenience, pleasure, and entertainment or out-door recreation of members of the owner's family. But, again it is contended that the declaration does not show that the collision was caused by the reckless driving of the driver of the defendant's car, or in what the improper driving consisted. The quotation from the declaration already made, is a sufficient answer to the first, and the second, not going to the sufficiency of the pleading, was met by the bill of particulars that the plaintiff was required by the court to give, at the instance of the defendant. These specified that the collision and resultant damage to the plaintiff's automobile and person were the proximate result of: (a) The reckless driving of the defendant's automobile by his son. (b) The excessive rate of speed at which the car was driven. (c) That the son was violating the law of the road in that he was not driving his automobile on his right side of the road, as required by law.

2. In response to a question by the attorney for the plaintiff as to whether the defendant Young said he owned the car, witness Kerns replied: "Yes, sir. And he also made the statement on the road down there that night at the scene of the accident that his car was insured." This answer insofar as it referred to the insurance of the car was excluded by the court. The defendant thereupon asked the court to discharge the jury, which the court refused to do. The defendant says this is error, and cites *Christie* v. *Mitchell*, 93 W. Va. 200, and *Moorefield* v. *Lewis*, 96 W. Va. 112, to sustain his position. In these cases the fact of the defendant being protected by indemnity insurance was brought to the attention of the jury on the trial by counsel for the plaintiff. The statement here was volunteered by the witness. Counsel for plaintiff was in no wise responsible for it. It, therefore, is

distinguished from the cited cases and falls clearly within the rule announced in .*Covington* v. *Navarre,* 99 W. Va. 431. Judge LITZ' words in the opinion there aptly apply here: "The jury was instructed to disregard it; and it does not appear that counsel for the plaintiff could have anticipated the objectionable answer of the witness. In view of these facts, a reversal of the judgment on the ground here advanced would be unfair to the plaintiff."

3. The traffic officer, Kerns, testified that James Young, who was driving the car, told him on the night of the accident and at the place of the accident within about fifteen or twenty minutes after the collision, that he (Young) was driving at the rate of forty-five miles an hour when he came over Butler Hill, which was about an eighth of a mile from the place where the cars collided. Kerns was there in performance of his duty as traffic officer and endeavoring to fix the responsibility for the accident. Young was also still on the scene. This statement of Young appears to have been a spontaneous, undesigned and illustrative incident and part of the litigated act. These are the tests of admissibility under the *res gestae rule.* 1 Wharton's Ev., sec. 259; 1 Greenleaf on Ev. 162; 14 Am. & Eng. Ency. Law, 914; *U. S.* v. *King,* (C. C.) 34 Fed. Rep. 314. The rule itself is incapable of any precise definition. Its application, say all the law books, to a particular case depends upon the circumstances of that case, and necessarily rests at last in every instance upon the discretion of the trial court. Such discretion and judgment, of course may be subject of review, but in doubtful cases there ought to be and is a presumption in favor of the action of the court below. It is not always easy to apply the rule correctly. In this case, while realizing that by analogy there may be some cases, such as *Hawker* v. *Ry. Co.,* 15 W. Va. 628, which would exclude it, the greater number sustain it. *Sample* v. *Light & Railway Co.,* 50 W. Va. 472; *Stone* v. *Railway Co.,* 66 W. Va. 417; *Starcher* v. *South Penn Oil Co.,* 81 W. Va. 587; *Blagg* v. *Railroad Co.,* 83 W. Va. 499. Does the fact that this declaration referred to a rate of speed that the car was traveling one-eighth of a mile from the point of collision affect its competency? In *Gibbard* v.

*Evans,* 87 W. Va. 650, this court said: "Like most general rules, this one [*Res gestae*] has its exceptions. One recognized and applied by this court is that, where other actions and conduct of a person accused of wrong doing were so recently connected in time and circumstance as likely to characterize his conduct and condition on the particular occasion involved, evidence thereof may be properly admitted for that purpose." However, this question finds direct answer in *Wilson* v. *Fleming,* 89 W. Va. 553: "Where the speed and manner in which an automobile is driven when a collision occurs is one of the issues to be determined by a jury upon conflicting evidence, testimony tending to show that one of the colliding cars was being driven upon a public highway in a dangerous and uncertain manner, or at an extraordinary rate of speed, a few minutes before this collision, should, when offered, be submitted to the jury." Then, again, the plaintiff having by the evidence established the son as the agent of his father and as acting within the actual authority of the defendant, the declarations and admissions of the son are proper, to bind the principal for the act of the agent. *Karr* v. *Railroad Co.,* 76 W. Va. 526.

4.  The next ground of error finds its lodgment in the instructions given to the jury by the court at the instance of the plaintiff. No good purpose would be served by incorporating all of them in this opinion. A general objection was made to numbers one, three, four, five, six and eight. It is sufficient to state that they are the ordinary instructions given in a personal injury case of this nature, and we perceive no material error in them. The second instruction is specially challenged by counsel for defendant. This instruction told the jury in effect, that if they believed from the evidence that the defendant's car was exceeding the speed limit, prescribed by law, at the time it collided with the car in which the plaintiff was riding, and further believe that said excessive speed at which defendant's car was going at the time of said collision was the proximate cause of the collision and the resultant injury to the person of the plaintiff, then and there, then the defendant is liable to the plaintiff and the plaintiff is entitled to recover from the defendant

damages as, in the opinion of the jury, would be a just compensation for the physical pain, mental anguish and distress suffered and endured by the plaintiff, in an amount not in excess of $3,500.00. It is claimed that the speed at which the car was being driven could not have been the proximate cause of the collision if it had been driven on the proper side of the road—and this latter provision was omitted therefrom. But, the instruction complained of within itself announces a correct principle of law. The running of an automobile on a state highway at an excessive rate of speed in violation of the statute is itself negligence, but of course the wrongdoer is only liable for such injuries as are the proximate cause of the illegal speed. This doctrine is recognized everywhere. *Moore* v. *Hart,* 171 Ky. 725; *Barshfield* v. *Vucklich,* 108 Kan. 761; *Roanoke Ry.* v. *Loving,* 137 Va. 331; *Nafziger* v. *Mahan,* (Mo.) 191 S. W. 1080; *Pietrycka* v. *Simolan,* 98 Conn. 490; *Westover* v. *Grand Rapids Ry. Co.,* 180 Mich. 373; *Hinkle* v. *Stemper,* 148 Minn. 77; *Noot* v. *Hunter,* 109 Wash. 343; Berry on Automobiles, 201. The instruction under consideration here told the jury that the driver would not be liable, unless such excessive speed was the proximate cause of the injury to the plaintiff's person. On the question of speed it is obvious that the position of the cars after the accident, and the damage sustained by them, was relevant to that issue. *Kelsea* v. *Stratford,* 80 N. H. 148; *Traction Co.* v. *Smith,* (Tex. Civ. App.) 223 S. W. 1013. As we have already shown this evidence was brought into the case by witness Miller for the defendant. The injuries to the Ford car argues in favor of the excessive speed that the Hudson was travelling at the time· of the impact. To cause such injury the momentum must have been great. The defendant, on cross-examination on this point, admitted that "speed and weight is what gives momentum." Of course, the jury would take into consideration all of the facts to determine whether the unlawful speed was the proximate cause of the collision. There is no testimony here showing that the Ford car was being driven at an unlawful rate of speed. The evidence does tend to show that the Hudson car was being so operated, and that the point of impact of

the two cars was about eighteen inches over on the plaintiff's side of the highway.  The driver of the Ford had the right to assume, even at that, that the Hudson car was running at a lawful rate of speed, and he might have avoided the collision and made the passing in safety, had it been so running.  All this was submitted to the jury by the instruction complained of here.

5.  Instructions numbers three and four requested by the defendant were properly refused because they were substantially covered by other instructions given.  By the first instruction the defendant would have had the court tell the jury to find for the defendant.  Under this record the court was clearly right in refusing to give it to the jury.

6.  The record discloses, from the evidence offered and that admitted on the trial, an earnest desire on the part of the learned trial judge, to give each litigant every right to which he was entitled, to the end that a fair trial be had.  The evidence is conflicting on several points.  The jury is the final arbiter in such cases.  The trial judge refused to set the verdict aside.  Our duty is to affirm the judgment.

*Affirmed.*