FRANKLIN SNYDER

*v.*

BALTIMORE & OHIO RAILROAD Co., *et al.*

(No. 10321)

Submitted April 17, 1951.   Decided May 8, 1951.

*George S. Wallace, George S. Wallace, Jr.,* for plaintiffs in error.

*W. H. Darnall, J. J..N. Quinlan,* for defendant in error.

Fox, President:

This is an action at law in which Franklin Snyder, plaintiff, sues the Baltimore & Ohio Railroad Co., and Leslie H. Dyke, defendants, claiming damages resulting from a collision between an automobile driven by him and a passenger train operated by the defendants over a crossing at Third Avenue and 23rd Street in the City of Huntington. A jury trial resulted in a verdict in favor of plaintiff in the sum of $4,000.00. A motion to set aside said verdict being overruled, judgment was entered thereon, and on petition of the defendants, we granted this writ of error. The parties will be referred to as plaintiff and defendants, the position they held in the court below.

The amended declaration on which the case was tried is in two counts. The first count alleges in great detail the duties of the corporate defendant in the operation of its train, through its servant and agent Leslie H. Dyke, the engineer operating the locomotive in said train,

among which duties were: to cause headlight to be lighted and burning; to slow down and reduce speed of train to ten miles per hour; to keep said train under such control as to avoid colliding with motor vehicles traveling east and west on said Third Avenue, and particularly that of the plaintiff; to keep proper lookout to avoid collisions; to cause a bell or steam whistle to be placed on said locomotive then and there pulling said train, and cause same to be rung or whistled by its engineer or fireman at a distance of at least sixty rods from the place where said railroad tracks cross said Third Avenue, and keep the same ringing or whistling for a time sufficient to give due notice of the approach of said train.

The said count then alleges that not regarding their duties in this behalf, they did, on January 21, 1949, at evening dusk of said day, and at the time and place aforesaid, carelessly and negligently operate said train over and across said public street, without causing the headlight then and there on said locomotive to be lighted and burning; without slowing down and reducing the speed of said train; did cross said Third Avenue at a high, excessive and unlawful speed, to-wit, thirty miles per hour; that the defendants did then and there wilfully, recklessly, carelessly and negligently fail to keep said train then and there being operated by them, as aforesaid, under such control as to avoid colliding with motor vehicles traveling east and west on said Third Avenue; did carelessly and negligently fail to keep a proper lookout on said locomotive to avoid colliding with motor vehicles crossing said railroad tracks at said public crossing on Third Avenue, as aforesaid, and particularly the motor vehicle then and there being driven and operated by plaintiff; did negligently and carelessly fail to cause the bell or steam whistle then and there placed on said locomotive to be rung or whistled by the engineer or fireman at a distance of at least sixty rods from the place where said railroad tracks crossed said public street; and did negligently and carelessly fail to keep the same

ringing or whistling for a time sufficient to give due notice of the approach of said train to the operators and drivers of the motor vehicles then and there approaching and preparing to cross said railroad company's tracks at Third Avenue, as aforesaid, and particularly this plaintiff, prior to the time said locomotive, engine and train reached said public street, road and arterial highway known as Third Avenue, as aforesaid; whereby the said defendants did carelessly, negligently, improperly and wilfully, and with great force and violence drive and operate said locomotive, engine and train into and upon plaintiff's automobile, then and there being driven and operated by him, as aforesaid, with reasonable and ordinary care and caution, along, upon and over said public street.

The declaration then goes on to allege the character of personal injury and damage to property occasioned by such collision, alleging that the automobile which plaintiff was operating was totally destroyed to the damage to plaintiff of $610.00, hospital bills, reasonable and necessary, in the amount of $143.75, and personal injuries described therein.

It will be noted that the first count of the declaration alleged the excessive speed of the train. The second count alleges an ordinance of the City of Huntington limiting the speed of trains at the Third Avenue crossing to ten miles per hour, and it was alleged that at the time of the accident, the speed of the train was thirty miles per hour, and that the defendants did thereby, and as a direct and proximate result of their careless, negligent, wilful and wanton conduct, cause the damage referred to in the first count of the declaration.

There was a demurrer to the amended declaration, and each count thereof, the grounds being that in count one there was a misjoinder of causes of action; and that count two contains no allegation of an act of negligence on the part of defendants which had any connection with plaintiff's alleged injury. The defendants then demurred

to the said counts severally, the allegation as to count one being that it improperly joined separate alleged acts of negligence on the part of defendants in the same count and was, therefore, made duplicitous. The demurrer to count two was based upon the contention that Third Avenue, on which the accident occurred, was an arterial highway, and state road known as U. S. Route 60, and that being so, Article 4, Chapter 17, of the Code, dealing with roads and highways, provides that the state road system, as defined therein, be under the authority and control of the State Road Commission; and that Sections 8, 9 and 10, of said Article, give the State Road Commissioner the authority to deal with railroad crossings, and give him full power to eliminate such crossing or separate the grades thereof; that this Act was passed subsequently to the city ordinance, recited, and, therefore, the ordinance has no application. The contention was that the speed permitted by statute over crossings is fifteen miles per hour. Furthermore, it is alleged that the amended declaration pleaded no facts showing connection between the violation of the ordinance and the injury complained of.

On the question raised on demurrer to the first count of the declaration, we think it only necessary to refer to the discussion of the general subject, contained in the two cases of *Duncan W. Daugherty, Adm'r.* v. *Baltimore and Ohio Railroad Co.*, heard together and decided in one opinion, on March 21, 1951. Dealing with the declaration in those cases, which involved a crossing accident, and which declaration contained substantially the same allegations as those employed in the case at bar, we held: "A count in a declaration alleging several facts which together constitute a single cause of action is not subject to the defect of duplicity." The discussion of the question in the opinion being full and comprehensive, we do not believe the question needs further elaboration. On the demurrer to the second count, we think the same was properly overruled. The ordinance limiting the speed of trains on Third Avenue and 23rd Street to ten miles

per hour was stipulated. This ordinance appears controlling. Whatever power the State had over Third Avenue did not, in our opinion, extend to traffic regulations. See Section 27, Article 4, Acts of the Legislature, Extraordinary Session, 1933, as amended by Chapter 109, Acts of 1949, Michie's Code, 17-4-27. The allegation in the declaration is that the speed provided for in the ordinance was exceeded, and this allegation, on demurrer, is admitted, even beyond fifteen miles per hour, which, as we understand, the defendants claim to be the proper limit. It is further alleged, in effect, that the injury and damages sustained by the plaintiff were the direct and proximate result of the careless, negligent, wilful and wanton conduct of the defendants in exceeding the prescribed speed. The question of whether the speed limit was actually exceeded, and whether it was the proximate cause of the injury which followed, is a question for a jury, as will be hereinafter discussed, and, of course, has no bearing whatever upon the ruling upon the demurrer. On the whole, we think the trial court did not err in overruling the demurrer of the defendants to the declaration.

Coming to the merits of the case, we will first take up the allegations contained in the first count of the declaration. That count alleges certain duties, some of which are statutory, which the railroad company is under obligation to perform, among which are to operate their trains in a careful and prudent manner, have headlight burning at appropriate times, ring bell and blow whistle at crossings, keep lookout for persons using crossings, and, generally, to operate trains in a manner calculated to secure, as far as possible, the safety of people using highways over which the corporate defendant was entitled to operate its trains. There is slight conflict on some of these questions, but aside from the conflict in respect to the speed of the train, we do not think the same is substantial. This accident occurred in the center of the City of Huntington, and at a point where one of the main thoroughfares of that city crosses the tracks

of the corporate defendant. The evidence is that the train was moving from Parkersburg in the direction of Kenova; that it had made a full stop near Fifth Avenue, about two blocks from the point of the accident; that the accident occurred about six o'clock in the evening, between dusk and dark, and while it was raining. It is almost inconceivable that at that time of evening, considering the surroundings, the defendants would not have operated a headlight on the train, and that it would not have made use of the signals with which the train was undoubtedly equipped, at what appears from all the evidence to be a much used crossing. When we come to the testimony, as to whether or not, at the time of the accident, there was a headlight burning, a bell ringing and a whistle blown, we have the testimony of the plaintiff that he did not see or hear any signals of the approach of the train, which may be construed that he did not hear a bell or whistle or see a headlight. A witness, Crickard, who was about three cars in the rear of the plaintiff, says that he heard no bell or whistle, and did not know whether the headlight on the train was burning. Sterling Gunnoe, who was some one hundred and fifty feet away, says that he heard no bell or whistle, and was not asked about the headlight. Louise Blankenship testified that she did not hear a bell or whistle, and that no headlight was burning. She was asked: "Did you notice whether there was a headlight on the engine burning?", to which she answered: "No, sir, there wasn't." She was then asked: "Could you see the engine from where you were before it got right on to Third Avenue?", to which she answered: "No, sir." When asked: "What kept you from seeing it?", she replied: "Well, I was on my way to the show and I never paid much attention up that way." From her testimony, it appears that she was testifying as to the headlight, or what she saw or did not see, when she ran to the scene of the accident after it had occurred. On the other side of this question, we have the testimony of all of the trainmen that the train was equipped with headlight,

bell and whistle, and that all of them were in operation when the collision occurred. The engineer and fireman are both explicit on both of these points, and the conductor, who at the time of the accident was in the rear coach, stated that he heard the whistle blowing, and immediately after the accident he went to the front of the train and the headlight was burning. Arthur Gibson, not an employee of the railroad company, said he heard the bell ringing and the headlight was burning. Aside from the testimony of Louise Blankenship, we have here negative testimony on the part of plaintiff and other witnesses that they did not hear the bell or whistle, against positive statements of the train crew and others that the signals were given, and that the headlight on the locomotive was burning. In this connection, it appears from the evidence that a watchman was maintained at this point, and there is some conflict as to whether he was there at the time of the accident. The witnesses who testified that they did not hear the bell or whistle are the witnesses who testified that they did not see a watchman at that time. The watchman himself testifies that he was there at the time of the accident; that he saw the plaintiff approach the track on the opposite side. of the track from where he was standing; that he gave warning; that he saw the train coming; and that he heard the bell ringing and the whistle blowing, and that the headlight on the locomotive was burning. There is support of his testimony, as to his presence, by a number of witnesses who testified that they saw him there.

The conflict, if any, as to headlight and signals, is very slight. The evidence is overwhelming in favor of the contention of the defendants. In cases of this character, it is quite usual for witnesses to testify that they did not hear certain signals, or did not observe certain physical facts, and the value of this character of testimony against persons who testify positively that certain signals were given or not given, or certain things done or not done, has received the attention of this Court in

many cases. In *Cavendish* v. *Railway Co.*, 95 W. Va. 490, 121 S. E. 498, we held:

> "The fact that witnesses have heard signals given by a locomotive approaching a crossing warning travelers of danger, is not necessarily in conflict with the evidence of other witnesses who did not hear them; for the observation of the fact by those who heard. is consistent with the failure of the others to hear them."

> "Whether a conflict arises between positive and negative evidence of this character depends upon the facts and circumstances of each case from which it may be determined whether such negative evidence has any probative value."

This holding is cited with approval, and put into the syllabus, in the case of *Jones* v. *Railway Company*, 115 W. Va. 665, 177 S. E. 621, and is the accepted law in this State. As therein suggested, the probative value of this character of testimony depends somewhat on the circumstances. Nothing in the testimony of the parties who testified that they did not hear the bell ringing or the whistle blowing indicates that their particular attention was drawn to such matter in any way. They simply testify that they did not hear or see anything. That is plaintiff's own statement, and no testimony in his behalf goes any farther, except the testimony of Louise Blankenship as to the headlight, and, considering all the circumstances, the fact that she was not in a position to see whether the headlight was burning at the time the locomotive reached the crossing, we do not think her testimony creates a conflict, and, therefore, we hold that as a matter of law, there was no negligence on the part of the defendants in respect to the headlight or the ringing of a bell or blowing of a whistle.

When we come to the question of the speed of the train, and the charge of recklessness alleged in the first count of the amended declaration, the evidence is in conflict. The trainmen testify that the train was running about fifteen miles per hour; but other testimony in the

case is to the effect that it was running from twenty to twenty-five to thirty miles per hour. One witness goes as high as thirty miles per hour. This speed, we think, in the circumstances, constituted reckless operation of the train from which the jury might have found negligence. We are of the opinion, therefore, on the whole case as alleged in the first count of the amended declaration, that there was some showing, against the railroad company, of reckless speed in the operation of its train, which, if the jury so found, might justify a finding in favor of the plaintiff, provided such recovery was not barred by the plaintiff's own contributory negligence, a question we will hereinafter discuss.

When we come to the allegations set up in the second count of the amended declaration, we have the ordinance of the City of Huntington limiting the speed of passenger trains at the 23rd Street crossing to ten miles per hour. As indicated above, on discussion of the demurrer, we think the railroad company is bound by this limitation, and admittedly the speed of the train was in excess of ten miles per hour. Therefore, the ordinance was violated, and the question arises whether there had been sufficient showing that there was such connection between the violation and the event as to make such violation the proximate cause of plaintiff's injuries and the destruction of his property. The amended declaration alleges that it was the proximate result of such injuries and destruction of property, but it does not go into detail as to how the result could have come about. We have often held that violation of statutes or ordinances, as to speed of vehicles on public highways, is negligence. Other cases say it is *prima facie* negligence. One of the first cases on the subject is *Ambrose* v. *Young,* 100 W. Va. 452, 130 S. E. 810. It was there held: "The running of an automobile on the public highways of this state at an excessive rate of speed in violation of a statute is of itself negligence, but the wrongdoer is only liable for such injuries as are the proximate result of such illegal speed." In *Oldfield* v. *Woodall,* 113 W. Va. 35, 166 S. E.

691, we held: "Disregard of a requirement of a statute or an ordinance is *prima facie* negligence when it is the natural and proximate cause of an injury." One of the latest cases on the subject is that of *Skaff* v. *Dodd, et al.*, 130 W. Va. 540, 44 S. E. 2d 621. It is there held that: "Disregard of the requirements of a traffic statute or ordinance is *prima facie* actionable negligence, when it is the natural and proximate cause of the injury, and where in an action for personal injuries t' e evidence conflicts on the question of proximate cause, such ques- tion is one of fact for the jury." In a still later case of *Moore* v. *Skyline Cab, Inc., et al.*, 134 W. Va. 121, 59 S. E. 2d, 437, we held: "The violation of an ordinance is not negligence as a matter of law, but is *prima facie* actionable negligence when it is the proximate cause of an injury." That case also held: "When the material facts bearing upon the question of contributory negli- gence are undisputed and reasonable men can draw but one conclusion from them the question of contributory negligence is a question of law for the court."

The question remains as to whether it has been shown that the alleged excessive speed of the train was the proximate cause of the injuries. In this connection, it must be borne in mind that what is the proximate cause of an injury is peculiarly within the province of a jury. Assuming that the ordinance prescribed speed of the train at this particular point was ten miles per hour; that the actual speed was around fifteen miles per hour; the jury might not have believed that the small difference in speed would account for the accident; but that a greater speed, such as thirty miles per hour, might be the proximate cause of the accident. The circumstances of the case might have been such that, but for the excessive speed, the driver of an automobile could have cleared himself from the path of the train. There is a discussion of this in *Jones* v. *Railway Co., supra,* and we think it deserves quotation. It reads as follows:

> "There is conflict in the evidence as to the speed of the train, and therefore that question

is to be viewed most favorably to the theory of the plaintiff, which puts it at thirty to forty miles. an hour and at a rate that is violative of the city ordinance. Under the West Virginia rule in order that the violation of an ordinance itself should furnish the basis of recovery, it must be shown that the breach of the ordinance was the proximate cause of the plaintiff's injury. *Ambrose* v. *Young,* 100 W. Va. 452, 130 S. E. 810; *Oldfield* v. *Woodall,* 113 W. Va. 35, 166 S. E. 691. See also, *Steiner* v. *Muldrew,* 114 W. Va. 801, 173 S. E. 891. In this case, the proof on that question is slight. Of course, it might be argued that if the train had been running at only fifteen miles an hour, plaintiff could have passed over the crossing before it reached the point of impact. On the other hand, it could just as plausibly be urged that if it had been traveling at a greater rate of speed than it in fact was, the train would have cleared the crossing before the plaintiff came along. The relative positions of the train and of the Gamble car at any time prior to the moment of impact are not shown. Neither is the time required to stop the train at the speed it was running, as compared with the time required to stop it at the rate of speed prescribed by the ordinance, proven. On the whole, we think it is a rather delicately balanced question whether the plaintiff has sufficiently shown that the speed of the train, under all the circumstances of this case, could have been the proximate cause of the plaintiff's injury. We are of opinion, however, that the correct rule where it is shown that the speed of the train has been in violation of an ordinance, is that that is a circumstance from which a jury might infer negligence. See *Grand Trunk Line Railway Co.* v. *Ives,* 144 U. S. 408, 418, 36 L. Ed. 485, where the Supreme Court, after reviewing the cases on the question, states: 'But, perhaps, the better and more generally accepted rule is that such an act on the part of the railway company is always to be considered by the jury as at least a circumstance from which negligence might be inferred in determining whether the company was or was not guilty of negligence.' While the court here speaks of negligence, it seems clear that, under the West Virginia rule, the same reasoning would have to be applied to

the question of proximate cause, arriving at the conclusion that its existence, being an element of actionable negligence, would, in such case, be a jury question. We, therefore, are of opinion that in so far as the prima facie showing of the defendant's negligence is concerned, the plaintiff had introduced sufficient proof to go to the jury."

We, therefore, reach the conclusion that the evidence in the case was sufficient to justify the court in submitting the question of negligence, based on the second count of plaintiff's amended declaration, to the jury for its consideration.

We do not pass upon the question of whether, from the facts and circumstances of this case, the evidence was sufficient to sustain the jury holding of primary negligence against the defendants. It is unnecessary to go into the rules governing such a situation. Permitting evidence to go to a jury on the question of negligence does not bind a court to accept the jury verdict whatever it may be. We are not called upon to decide this question in this case because, in our view of the case, and whatever be our holding on that question, the plaintiff is barred from recovery because of his own contributory negligence.

If we concede for the sake of argument that the jury would have been warranted in finding the defendants guilty of primary negligence on account of excessive speed, in violation of the city ordinance, and if we should believe the testimony of certain witnesses that such speed was reckless under the circumstances aside from the ordinance; nevertheless the evidence is clear beyond all question that the plaintiff himself was guilty of contributory negligence from which his personal injuries and damage to his property proximately resulted. The evidence on this point, coming from the plaintiff himself, is conclusive. To begin with, plaintiff had a sufficient view of the railroad crossing to have enabled him to see the oncoming train in time to stop his automobile and thus prevent a collision. An uncompleted building obstructed

his view to some extent, but measurements taken from different points on Third Avenue show the view he could have had from those points. From a point in the center of Third Avenue, eighty-four feet from the center of the crossing, he had a view of the tracks of eighty feet; coming nearer to the center of the crossing, at forty-two feet, and from the same position on Third Avenue, he had a view of one hundred and fifty-seven feet; from a point on Third Avenue, thirty-one feet from the center of the crossing, he had a view of nine hundred and fifty-seven feet. These measurements were taken later, presumably when the atmosphere was clear, and it is fair to assume that darkness and rain might have affected the view at the time of the accident. Plaintiff testifies that he was traveling along Third Avenue in the first lane of traffic to the right of the center line. Third Avenue has six traffic lanes divided by a center line, and plaintiff occupied the first right-hand lane in the direction he was going. In the next lane of traffic was a pick-up truck which may or may not have obscured his vision to the right. He was driving a 1932 Chevrolet automobile. He says the brakes on his automobile were in good condition; that he first saw the train when he was fifteen feet from the railroad crossing; that he was traveling at a speed of from eight to ten miles per hour; and when asked in what distance he could stop, replied "right there". A witness who was traveling in the same direction, and about three cars back of plaintiff, says that he was operating his automobile at a speed of about twenty-five miles per hour, indicating that plaintiff had underestimated the speed at which his automobile was traveling. It was the duty of the plaintiff, when he came to the point where he could observe the railroad crossing, to look to see whether a train was approaching. There were crossing signs at the crossing, and plaintiff, who lived at Barboursville, traveled to and from his work over this crossing, and was quite familiar with it. If there was no obstruction on the highway cutting off his view, he could, at a point eighty-four feet from the center of the crossing, have observed the railroad

track for a distance of eighty feet. From forty-two feet back of the center of the crossing, he could have observed the train for one hundred and fifty-seven feet, and at thirty-one feet from the center of said crossing, he could have observed it for nearly a thousand feet. Had he look.d from either of said points, he was bound to see the train coming. He evidently did not look at any of these points, and, according to his statement, he must not have looked until he was within fifteen feet of the crossing, and then he saw the train coming and it was too late to stop. The result is that he either crashed into the front of the locomotive or the front of the locomotive struck his car. It is immaterial just what occurred. It is always difficult to appraise the affect of a collision on vehicles. The automobile was caught near the front of the locomotive and at a point in a vacant space between what is known as the pilot of the engine and the cylinder. The front of plaintiff's automobile was practically demolished. The engineer did not, by reason of his position on the locomotive, see the plaintiff. The fireman did see him some forty-five feet from the crossing and when the locomotive was approximately at the sidewalk. He called out to the engineer, who apparently knew something was wrong and had already applied his brakes. The train was stopped within one hundred and fifty feet from the crossing, and it is admitted that for a train of some three hundred feet in length, it was a successful stop, and it indicates that the train was not running at a high speed. The watchman, who says he was at the crossing, saw plaintiff coming when he was about forty feet from the tracks. The testimony of all of the witnesses who saw the plaintiff is that he did not stop or attempt to stop at any time when such an effort would have prevented the accident.

The existence of a railroad track passing over a street crossing is itself a warning to persons operating vehicles over streets and highways. The plaintiff being familiar with this crossing could not disregard the existence of this railroad track, and the fact that at some time it

would be used for the passing of trains. He was bound to see that which was in plain sight. A plaintiff will not be heard to say that he did not see an approaching train or vehicle, where there was an unobstructed view thereof, and it could be plainly seen. *Maynard* v. *C. & O. Railway Co.*, 111 W. Va. 372, 162 S. E. 171; *Yoder* v. *Transit Co.*, 119 W. Va. 61, 192 S. E. 349; and *Casto* v. *Transit Co.*, 120 W. Va. 676, 200 S. E. 841. Everyone else in that neighborhood, who testified in the case, said they saw or heard the train approaching. The plaintiff alone seemed to have been oblivious to the fact that there was a train on the tracks. The fact that he must have waited until he was within fifteen feet of the crossing before he looked for the train was his own act of negligence. According to his own statement, he says he could have then stopped his automobile. It may have been too late, and it was certainly too late for the trainmen to have prevented the accident. We conclude, therefore, that inasmuch as it is shown that plaintiff was observed by the fireman when he was at a point where he had ample time to stop his automobile, that immediately the brakes on the train were applied, and everything possible done to prevent the accident, the act of the plaintiff in forging ahead, without looking for the train until it was too late, was clearly the proximate cause of his injuries and damage. We need not cite authority for the proposition that in such circumstances a plaintiff cannot recover.

We, therefore, reverse the judgment of the Circuit Court of Cabell County, set aside the verdict returned by the jury, and remand the case for a new trial.

*Reversed and remanded.*