# CHARLESTON.

## STEPHENSON *et al* TO USE OF MELTON *v.* COLLINS.

Submitted February 14, 1905.   Decided March 14, 1905.

1.   CONTRACT CONSTRUED.

The contract sued on provided:   "Sixth, the parties of the second part further agree that they will place upon the skids, logs at the following rate, to-wit;   To keep a constant supply of logs on skids, sufficient to run the mill not to exceed 20,000 feet per day of 20 days each month, unless otherwise hindered by Providence."    *  *  *  "Ninth, the parties of the first part still further agree to run the saw-mill at Big Beechy constantly at its full capacity as nearly as possible unless otherwise hindered by Providence." These provisions being considered with the remainder of contract sued on, it is *Held*:

(a)   The clause "not to exceed 20,000 feet per day of 20 days each month" fixed the maximum supply of logs which the parties of

the second part could have been required to keep on the skids, and not the amount of logs which the parties of the first part were required to remove from the skids under the implied covenant of the contract.

(b) The parties of the second part were required to remove from the skids under the implied covenant of the contract an amount of logs sufficient to run the mill when run constantly at its full capacity as nearly as possible. (p. 356.)

2. CAUSE OF ACTION—*Pleading.*

    A declaration must aver all the facts necessary to show a cause of action against the defendant; otherwise it is bad on demurrer. (p. 359.)

Error to Circuit Court, Clay County.

Action by Samuel Stephenson and G. W. Patrick, for use of John J. Melton, against David Collins and William Thompson, Jr. Judgment for plaintiffs, and defendant Collins brings error.

*Reversed.*

HENRY B. DAVENPORT, E. W. KNIGHT and J. W. KENNEDY, for plaintiff in error.

PAYNE & PAYNE, LINN, BYRNE & CATO, and HORAN & HORAN, for defendants in error.

COX, JUDGE:

This is a writ of error and *supersedeas* allowed David S. Collins to a judgment of the circuit court of Clay county, rendered against him upon the verdict of a jury for $2,500.00 damages in an action of *assumpsit* in which Samuel Stephenson and G. W. Patrick, suing for the use of John J. Melton, were plaintiffs, and David S. Collins and William Thompson, Jr., were defendants, service of process being had only upon Collins. The amended declaration sets up a written contract under seal, bearing date the 1st day of November, 1899, between Collins and Thompson, parties of the first part, and Stephenson and Patrick, parties of the second .part. The declaration purports to set out the covenants of the contract in the language thereof. In comparing the declaration with the contract found in the record, they do not agree in all respects. The fifth section, as found in the contract, is stated to be the sixth section in the declaration, but for convenience we shall hereafter refer to it as the sixth section, following the declaration.

The declaration avers the assignment and transfer of the contract by Stephenson and Patrick on the 29th day of December, 1899, to John J. Melton, and the performance thereof by Stephenson and Patrick up to that time, and the performance thereof after that time to completion by Melton, and that the defendants turned the contract over to the David S. Collins Lumber Company, a corporation, to represent the defendants in all matters and things pertaining to the said contract.

The covenants of the contract, as set up in the declaration, are as follows:

First. That the parties of the second part agree to cut all merchantable logs, haul and place them on the skids along the tram-road leading to a saw mill, placed at the mouth of Big Beechy, Clay county, West Virginia; the said tram-road to be built into the timber by the parties of the first part as far as practicable; timber to be placed on the skid way convenient for loading on the tram trucks; logs to be scaled at the mill by the parties of the first part or their representatives in conjunction with the parties of the second part or their representatives; said logs to be scaled by Doyle's Rule of measurement.

Second. The parties of the second part further agree to use all due diligence in carefully felling timber. And so far as practicable to avoid splitting and waste of timber in felling and to have the same carefully butted and cut into such lengths as parties of the first part may direct.

· Third. The parties of the second part further agree to employ competent men in this particular part of the work and to keep careful watch over his employees in behalf of the interest of the parties of the first part.

Fourth. The parties of the second part further agree to work in conjunction with the instructions of the parties of the first part or their representatives in regard to sizes of the trees to be cut into logs acceptable to the parties of the first part, and in conformity to a contract between the said William Thompson, Jr., one of the parties of the first part, with the executors of M. Thompson, deceased, dated the fifth day of September, 1899, and logs 20 feet in length or over to be measured in the middle. (W. T. Jr.)

Fifth. The parties of the second part further agree to

cut and skid cleanly felling as they go so far as practicable
under the instruction of the parties of the first part or of
their representatives all poplar, cucumber, ash, lynn, white,
red, black, and chestnut oak, hemlock, beech, birch and
chestnut, according to the contract mentioned in article "4"
of this agreement.

Sixth.   The parties of the second part further agree that
they will place upon the skids logs at the following rate,
to-wit:   To keep a constant supply of logs on skids, suffi-
cient to run the mill not to exceed 20,000 feet per day of 20
days each month, unless otherwise hindered by Providence.

Seventh.   The parties of the first part agree with the par-
ties of the second part that they will pay for all mechantable
logs delivered upon the skids as agreed upon in Article "1"
of this agreement the sum of $2.60 per thousand feet, accord-
ing to the rule of scaling as stated in Article "1" of this
agreement.   And the parties of the first part further agree
to furnish to the parties of the second part in the tree, what
timber they may need for buildings necessary about their
works; the timber to be same as mentioned in Article "7" of
this agreement.

Eighth.   The parties of the first part agree to pay the par-
ties of the second part, on or about the 15th day of each
and every month, 75 per cent. of all timber delivered on
the skids before mentioned the preceding month, the balance
to be paid for in 30 days thereafter.

Ninth.   It is further agreed that in case a disagreement
shall arise in any matter pertaining to this business, each of
the parties to this agreement shall select an arbitrator and
these two arbitrators shall select a third, then these three
arbitrators shall decide the question or questions in dispute,
and their decision shall be final and binding upon all parties
hereto.   Each shall pay the expenses of the arbitrator selected
by him, and the expenses of the third arbitrator shall be
equally divided between them.

"Ninth."   The parties of the first part still further agree to
run the saw mill at Big Beechy constantly at its full capacity
as nearly as possible unless otherwise hindered by Provi-
dence.

Eleventh.   It is further agreed that the parties of the
second part are to cut and skid all timber used for tram pur-

poses and for yard skids at actual cost. It is understood and agreed by all parties to this agreement that this is to include all the timber on the water sheds of Big Beechy.

'Twelfth. It is further agreed that the parties of the first part agree to tram and saw at actual cost the lumber needed by the parties of the second part for the buildings necessary for the transaction of the logging of the aforesaid mill. The said parties of the second part to begin work immediately.

The principal object of this suit, as disclosed by the amended declaration, is to recover damages for the breach of the implied covenant of said contract on the part of the first parties to remove the logs contemplated thereby from the skids. The work contemplated by the contract has been completed and the plaintiffs claim that they were delayed in the performance of the contract by the failure of the defendants to remove the logs from the skids as fast as required by the implied covenant. There are 37 assignments of error by defendant Collins found in this record, the first of which is that the court erred in not sustaining the demurrer to the declaration as amended. In passing upon this assignment of error it will be necessary for us to construe the contract so that we may ascertain what was the nature and extent of the implied covenant sued on, if one existed; and then to determine whether or not the averments of the declaration are sufficient to show a cause of action and a liability upon the defendants under such implied covenant.

The sixth section of the contract previded that, "the parties of the second part further agree that they will place upon the skids, logs at the following rate, to-wit: To keep a constant supply of logs on skids sufficient to run the mill not to exceeed 20,000 feet per day of 20 days each month, unless otherwise hindered by Providence." The ninth section provided that, "the parties of the first part still further agree to run the saw-mill at Big Beechy constantly at its full capacity as nearly as possible unless otherwise hindered by Providence." In construing these sections we must consider the whole contract. *Heatherly* v. *Bank*, 31 W. Va. 70. All the provisions of the contract must be taken into consideration and reconciled if possible so that the true intent of the parties may be ascertained. *Barber* v. *Ins. Co.*, 16 W. Va. 658.

What is the true construction of the clause "not exceeding 20,000 feet per day of 20 days each month unless otherwise hindered by Providence," contained in the sixth section? Did this clause fix the amount of logs which the first parties might have compelled the second parties to place upon the skids and which the first parties were required to remove from the skids; or was this clause alone for the benefit and protection of the second parties by fixing the amount beyond which they could not be compelled to keep a supply of logs on skids?

If this clause fixed the agreed amount both ways and up to which each side might have required the other to go in the performance of their respective covenants, the one to place logs on the skids and the other to remove them from the skids, then the ninth section had no material effect, and was a useless provision. If the second parties might have required the first parties to remove from the skids the amount of logs mentioned in the clause under consideration and only that amount without regard to the capacity of the mill it would have been immaterial to the second parties whether the mill was run at its full capacity or not, and there would have been no object in the covenant for their benefit that the first parties would run the mill constantly at its full capacity as nearly as possible. On the other hand, if the clause under consideration was solely for the purpose of limiting the covenant of the second parties to keep a supply of logs on the skids and of fixing the maximum amount beyond which they could not have been required to keep logs on the skids, the ninth section was a material and effective covenant for their benefit. It seems to us, considering these sections together, that the clause "not to exceed 20,000 feet per day of 20 days each month," limited the covenant of the second parties and fixed the maximum supply of logs which they could have been required to keep upon the skids, and did not fix the amount which the first parties were required to remove from the skids. This being the construction of the clause referred to, what was the amount of logs which the first parties were required to remove from the skids under the implied covenant of the contract? In other words, what was the implied covenant, if one existed? Again, we must consider the sixth and ninth sections together in the light of

the whole contract. The sixth section required the second parties to keep a constant supply of logs on skids sufficient to run the mill not to exceed, &c. The ninth section required the first parties to run the saw-mill constantly at its full capacity as nearly as possible, unless otherwise hindered by Providence. It appears to us that the implied covenant on the part of the first parties was to remove from the skids an amount of logs sufficient to run the mill when run constantly at its full capacity as nearly as possible. It is true that the seventh section required the parties of the first part to pay for all merchantable logs delivered upon the skids, as agreed upon in Article "1" of said contract, and that the eighth section required the first parties to pay the second parties on or about the 15th day of each and every month 75 per cent. of all timber delivered on skids before mentioned the preceding month, the balance to be paid for in 30 days thereafter; but we think the phrases "all merchantable logs" and "all timber," as used in these sections, mean all merchantable logs and all timber which the parties of the second part might deliver in accordance with the provisions of the contract, not without limit, but limited according to the true intent and meaning of the contract.

If the nature and extent of the implied covenant was as above indicated, are the averments of the declaration sufficient? The declaration avers, "it was necessary and it was implied upon the part of the defendants, that they agreed so to do—to take the timber from the skids and place it upon the mill yard, as rapidly as possible; so as to enable the mill to cut its full capacity which was an average of 350,000 feet per month counting 20 days per month. That by the terms of said contract it became and was the duty of the said defendants to scale and measure at the mill or the mouth of Big Beechy creek all the timber and logs delivered by the plaintiffs on skids in each month and to pay therefor 75 per cent. of the contract price therefor on or about the 15th day of each succeeding month. In order to do and perform such conditions of said contract it became and was necessary and the duty of said defendants to take and remove from the skids to the said mill on, or against, or about the 15th day of each month, all the timber and logs so delivered upon the skids in the preceding month along the tram road to be provided

by said defendants," &c.   The declaration does not state cor-
rectly the implied covenant, or its legal effect or a legal
liability under it according to our construction of the con-
tract.   It is a general rule that the contract must be stated
correctly.   "No distinction exists in pleading between an
implied promise and an express one; it is true that in evi-
dence the law in many cases implies from certain facts that
a promise has been made, but in pleading, the supposed
promise itself should be alleged."   1 Chitty Pl. 309,   (16th
Am. Ed.)

"Where the promise is founded on a legal liability and
implied, it is sufficient to state such liability, without alleg-
ing formally that the defendant promised."   Saunders Pl. &
Ev., Vol. 1, p. 140.

"It is laid down as a principle on this subject that a con-
tract or written instrument should be stated according to its
legal effect.   This rule is of very extensive operation and
applies not only to the statement of contracts in the action of
*assumpsit*, but also to the statement by either party of con-
tracts and obligations of every description, whether verbal,
written, or specialty, in any form of action.   The party is
not compelled to follow the precise form of words in which
the contract was made; it suffices if he state its true legal
effect and operation."   1 Chitty Pl., 312,   (16th Am. Ed.)

In assigning the breach of the implied covenant the declara-
tion avers, "to do and perform which said several conditions
and requirements of said contract, the said defendants their
agents and assignees failed and refused."   Also, "that neither
the said defendants nor the David S. Collins Company nor
any one for the defendants, did in all things comply with
said contract so far as therein required of the said defendants."
There is no direct averment that the defendants did not run
the saw-mill constantly at its full capacity as nearly as possi-
ble, or that the defendants did not remove from the skids an
amount of logs sufficient to run the mill when run constantly
at its full capacity as nearly as possible.   Formerly the gen-
eral averment that the defendants did not perform their con-
tract was not sufficient.

"The breach in general should be certain and express and
the general statement that the defendant has not performed
(*non performavit*) his agreement or promise is bad on de-

murrer, though aided by verdict." 1 Chitty Pl. 346, (16th Am. Ed.)

It has been held in *Wheeling* v. *Black*, 25 W. Va. 266, in an action on a bond with collateral condition, that under our statute, chapter 130, section 46 of the Code, providing for the filing of a bill of particulars of plaintiff's claim, the necessity for special assignment of breaches is to a great extent if not entirely obviated by filing such bill of particulars with the declaration and that by filing such bill of particulars with the declaration the plaintiff may dispense with such special assignment in most if not in all cases. No bill of particulars was filed with the declaration in the case at bar. If a bill of particulars had been filed and was defective it could not have been taken advantage of by demurrer but only by moving to exclude the evidence from the jury which might be offered to sustain such imperfect bill of particulars. This statute does not relieve the plaintiff of the necessity of averring all the facts necessary to show a cause of action against the defendants. The declaration in the case at bar fails to do this. The averment of the implied covenant or its legal effect or the liability under it taken with the general assignment of the breach and the other facts averred do not constitute a cause of action against the defendants under our construction of the contract.

We think it was unnecessary for the declaration to notice the latter clause of the ninth section, which is in these words, "unless otherwise hindered by Providence." If the act of Providence hindered defendants in the performance of this covenant it is a proper matter of defense.

There is another part of this declaration which is as follows: "That the said defendants, disregarding their said contract and the rights of the plaintiffs, took charge of and hauled to another mill of the said defendants, 50,000 feet of the timber which, by the terms of said contract, the plaintiffs were entitled to haul and skid and would have hauled and skidded, and thus without the consent of the plaintiffs, deprived the plaintiffs of their right to haul the same and make the profit thereon of $50.00." This averment is preceded by the averment that the plaintiffs would have realized a profit of one dollar per thousand feet or as much as $4,500 on the whole contract, but there is no averment that there would

have been any profit on this particular 50,000 feet, or that defendants did not pay the contract price therefor. This part of the declaration is too vague and uncertain to constitute a cause of action.

For the reasons above stated, the demurrer to the amended declaration should have been sustained. The views above expressed make it unnecessary for us to pass upon the thirty-six other assignments of error.

For the reason stated, the judgment of the circuit court of Clay county entered upon the verdict of the jury in this action is reversed and the verdict of the jury set aside, and the order and judgment of the circuit court over-ruling the demurrer to the amended declaration is reversed and the said demurrer is sustained, and this action is remanded to the circuit court of Clay county to be further proceeded with, and with leave to the plaintiffs to amend their declaration.

*Reversed.*