EDITH FLANAGAN

*v.*

WALTER O. MOTT, *Sheriff*, ADMINISTRATOR OF THE ESTATE OF LONNIE F. DAYTON, *Deceased*, AND OSGOOD BUS LINES, INC., *a Corporation*

(No. 12003)

and

EDITH FLANAGAN

*v.*

WALTER O. MOTT, *Sheriff*, ADMINISTRATOR OF THE ESTATE OF LONNIE F. DAYTON, *Deceased*.

(No. 12004)

Submitted April 12, 1960.    Decided May 17, 1960.

*Vernon E. Rankin, James H. Swadley, Jr., N. Howard Rogers, John M. Hamilton,* for plaintiffs in error.

*H. R. Athey, H. G. Shores,* for defendant in error.

GIVEN, JUDGE:

These writs of error were granted on separate petitions of defendants to a judgment of the Circuit Court of Mineral County, entered on a verdict of a jury for $12,500.00, in a proceeding prosecuted by Edith Flanagan, wherein she alleged that personal injuries resulted to her from negligence of defendant Osgood Bus Lines, Inc., and Lonnie F. Dayton, decedent of Walter O. Mott, sheriff, administrator of the estate of Lonnie F. Dayton. The questions to be considered arise from the same facts, growing out of the same accident, and may be more clearly disposed of in a single opinion.

The accident occurred on the 29th day of October, 1957, about eleven fifteen P.M., on the state and federal highway designated as U. S. Route No. 220, on

the Memorial Bridge, which crosses the North Branch of the Potomac River from Maryland into the City of Keyser, West Virginia, the point of the accident being within the corporate limits of the City of Keyser. Plaintiff, at the time of the accident, was a passenger for hire on a bus of the defendant Osgood Bus Lines, Inc., a common carrier, which had stopped on the bridge to permit passengers, including plaintiff, to alight from the bus. The point on the bridge at which the bus stopped was considered a regular bus stop, and no sign at or near that point indicated any prohibition against such stopping. No ordinance of the city prohibited such stopping, and officials of the city were aware that buses usually stopped at that point on the bridge for the purpose of permitting passengers to board or alight from a bus. At that point the bridge is elevated and steps lead from the bridge down to a public street within the city.

It appears from the testimony of the bus driver that shortly before reaching the point where the accident occurred, he received a signal from a passenger indicating a request to be permitted to alight from the bus at that point, and that he brought the bus to a slow stop, in the usual manner. After a complete stop, and after a passenger had started toward the exit door of the bus, a sudden impact occurred by the striking of the rear of the bus by an automobile owned and then being driven by Lonnie F. Dayton, which had the effect of driving the bus forward a distance of from two to seven feet, resulting in the injuries to plaintiff complained of. Dayton died within a few minutes after the collision.

No person other than the driver was in the Dayton automobile at the time of the impact. No automobile other than the Dayton car was near the bus at the time of the accident. No witness testified as to the speed or the manner of the driving of the Dayton automobile immediately before the collision. The several lights on the rear of the bus, including the "directional lights", were burning immediately before the collision,

and after. Though the driver of the bus was in position to observe, through side mirrors, any lights of any automobile approaching the bus from the rear, he testified that "there was no light". He further testified, without objection, to the effect that there was nothing "in the world" he could have done "to have prevented the injury happening to Mrs. Flanagan by the rear end collision by Lonnie Dayton" with the bus. Other testimony is to the same effect, but, of course, such evidence must be related in time to the period subsequent to the stopping of the bus. The evidence does not clearly establish the time which elapsed between the time the bus was completely stopped and the time of the impact. The bus driver testified that period of time to be "fifteen or twenty seconds". Such time was much greater according to estimates of other witnesses. The jury may have been warranted in inferring that less time expired, inasmuch as the passengers who were alighting from the bus had taken only two or three steps toward the exit door of the bus when the impact occurred.

The defendant administrator filed his special plea, alleging that his appointment as personal representative of the estate of Lonnie F. Dayton, deceased, was void, for the reason that Dayton, at the time of his death, or since, had "no estate to be settled", contending that before such a personal representative can be appointed it must be established that the decedent owned personal estate. A demurrer to the special plea was sustained by the trial court. We find no prejudicial error. In *Butcher v. Kunst,* 65 W. Va. 384, 64 S. E. 967, we held: "8. An order of the county court appointing an administrator, whether distributee, creditor, or other person, will not be set aside on writ of error to this Court, unless it plainly appears that there was abuse of the discretion of the county court in making such appointment." See *Allen, Administrator v. Linger,* 78 W. Va. 277, 88 S. E. 837; Code, 44-1-4; Code, 44-1-11; Code, 55-7-5; *Richards, Administrator v. Riverside Iron Works,* 56 W. Va. 510, 49 S. E. 437.

Moreover, the circuit court found, as set out in the order striking the plea, that the decedent "was possessed of an automobile at the time of his death".

Each defendant contends that the evidence establishes that the verdict was excessive. We do not agree. Immediately after the collision plaintiff, in a semiconscious state, was removed to a hospital, where she remained for approximately one week. She was under the care of a physician for approximately one and one half years. She "sustained a severe cerebral concussion"; "a fracture of the fourth left rib"; "a severe contusion of the whole spine", which necessitated the use of "traction" over a considerable period of time; "multiple contusions of the skin"; "multiple abrasions"; "secondary to the contusions of the spine, developed what we call a sciatica of the left hip"; and injuries to the left arm which resulted in numbness and decreased use of the left hand. There was permanent injury to the neck and permanent injury to the left hand, which would "seriously interfere with her employment". At the time of her injury she was fifty nine years of age and employed at a salary of thirty five dollars per week. Her hospital, medical and other necessary expenses, and loss of wages to the time of the trial, amounted to $3,624.70.

There being no known method of accurately determining the amount of damages resulting from such injuries, or for pain and suffering, an appellate court will not disturb a verdict of a jury fixing the amount of such damages on the ground that it is inadequate or excessive, unless the verdict is so inadequate or so excessive as to clearly induce a belief that it resulted from "passion, partiality, corruption, or prejudice", or that the jury was "misled by some mistaken view of the case". *French v. Sinkford,* 132 W. Va. 66, 54 S. E. 2d 38. See *Collins v. Skaggs,* 110 W. Va. 518, 159 S. E. 515. In *Nichols v. Raleigh-Wyoming Coal Co.,* 112 W. Va. 85, 163 S. E. 767, we held: "Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the

testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence.'' See *Perry v. Scott*, 134 W. Va. 380, 59 S. E. 2d 652; *Meadows v. Corinne Coal & Land Co.*, 115 W. Va. 522, 177 S. E. 281; *Thalman v. Schultze*, 111 W. Va. 64, 160 S. E. 303. We find nothing in the amount of the verdict returned to indicate any prejudice or improper motive on the part of the jury.

It is also contended that the action of the trial court in permitting the plaintiff voluntarily to file and read to the jury an amended bill of particulars constituted prejudicial error. We perceive no error in such action. Evidence was before the jury, without objection, concerning each item of the amended bill of particulars, specifically describing the amounts of such items, except the one relating to ''pain, injury, suffering and permanent disability''. No instruction was offered which related to the duty of the jury as to the amount of any finding based on pain, injury, suffering or permanent disability. The amount of damages sued for was fifteen thousand dollars. Such facts would clearly have informed the jury as to plaintiff's claim for such matters, had no bill of particulars been filed. There could exist no prejudice.

A bill of particulars is not a pleading. *State v. Rogers*, 132 W. Va. 548, 52 S. E. 2d 678. Such a bill does not make admissible evidence which would be otherwise inadmissible. *Stephenson v. Collins*, 57 W. Va. 351, 359, 50 S. E. 439. The filing of a bill of particulars is within the sound discretion of the trial court, and the granting or refusal to grant such a bill is not reversible error, unless it is clear that the rights of parties were prejudiced. See *State v. Melanakis*, 129 W. Va. 317, 40 S.E. 2d 314; *Keister v. Philips*, 124 Va. 585, 98 S. E. 674.

Code, 17C-13-3, insofar as material, provides that ''No person shall stop, stand, or park a vehicle, except when necessary to avoid conflict with other traffic or in compliance with law or the directions of a police

officer or traffic-control device, in any of the following places: * * * (13) Upon any bridge or other elevated structure upon a highway or within a highway tunnel * * *''. The pertinence of this statute arises from the contention that the violation thereof by the Osgood Bus Lines, Inc., in stopping the bus on the bridge, constituted prima facie negligence. Since the evidence clearly establishes that the City of Keyser had enacted no ordinance relating to the regulation of traffic on Memorial Bridge, we do not consider any question which could arise in the event of the existence of such an ordinance.

Code, 55-7-9, provides that ''Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages.'' The decisions make it clear, however, that liability for such damages arises only where the violation is the proximate cause of the injury complained of. *Pitzer v. Tomkies,* 136 W. Va. 268, 67 S. E. 2d 437; *Powell v. Mitchell,* 120 W. Va. 9, 196 S. E. 153. Only a rebuttable prima facie presumption of negligence arises on a showing that the statute was violated.

It is also material to note that the plaintiff was a passenger for hire on a common carrier at the time of her injury, and that the proof of that fact, and proof of injury of plaintiff while such a passenger, raises a prima facie presumption of negligence on the part of the common carrier. *Isabella v. West Virginia Transportation Co.,* 132 W. Va. 85, 51 S. E. 2d 318. The problem here, therefore, is to determine whether such prima facie presumptions have been rebutted, that is, whether negligence of the defendant bus company was the proximate cause of plaintiff's injuries, or contributed directly thereto.

There can be no doubt from the evidence, as detailed above, that the negligence of Dayton contributed to the injuries of plaintiff. The only doubt, seemingly,

that could arise, would be whether the negligence of Dayton so intervened in the chain of circumstances as to become the sole proximate cause of the injuries, thereby rendering any act of negligence on the part of the bus company a noncontributing cause.

In *Blankenship v. The City of Williamson*, 101 W. Va. 199, 132 S. E. 492, we held: "1. Whether the negligence of the defendant as charged in the declaration is the proximate cause of the plaintiff's injury, or whether the sole cause of the injury was the act of an independent third person, are questions of fact for jury determination." See *Snyder v. Baltimore and Ohio Railroad Co.*, 135 W. Va. 751, 65 S. E. 2d 74; *Skaff v. Dodd*, 130 W. Va. 540, 44 S.E. 2d 621; *Taylor v. City of Huntington*, 126 W. Va. 732, 30 S. E. 2d 14; *Fischer v. Clark*, 110 W. Va. 420, 158 S. E. 504; *Schwartz v. Shull*, 45 W. Va. 405, 31 S. E. 914; *Hamilton v. Glemming*, 187 Va. 309, 46 S. E. 2d 438; *Baecher v. McFarland*, 183 Va. 1, 31 S. E. 2d 279.

From a full and careful consideration of the evidence, the court is of the view that there was sufficient evidence before the jury to support its finding that the negligence of the bus company continued, and directly contributed to, the accident. The evidence of defendant as to the time which elapsed between the stopping of the bus and the collision is not of such nature as to compel the jury to believe the estimates given by the witnesses. On the other hand, the jury could reasonably have inferred, from facts proved, that the accident happened almost immediately on the stopping of the bus; that the Dayton automobile was being driven too close to the rear of the bus at the time; and that the driver of the bus should have discovered that fact in time to have avoided the accident. Though the driver of the bus testified that he saw no light from any automobile to the rear of the bus before the accident, the physical presence of the Dayton automobile establishes its presence, and it was not unreasonable, in such circumstances, for the jury to have inferred that the driver did not look at the

proper time. In the instant case the jury were instructed, at the instance of the bus company, "* * * that you cannot find against the defendant bus company unless you find, from a preponderance of the evidence in this case, that said defendant's negligence in stopping on said bridge at that time contributed to said injuries or was a proximate cause of the injuries received by the Plaintiff. You are further instructed that proximate cause is defined as that which produces an injury directly, or in the natural and normal sequence of events, unbroken by an intervening, independent new act of negligence, and without which the event would not have occurred." Thus the question of whether the negligence of the bus company contributed to the injury was clearly left to the jury by the trial court. "3. A jury may consider and weigh all reasonable and justifiable inferences which may be drawn from the evidence and circumstances." *State v. Sotak,* 100 W. Va. 652, 131 S. E. 706, 46 A. L. R. 1523.

The law is well settled that where negligence of two or more persons concurs in point of time and place, contributing to the injury of another, each is liable in damages. In *Sigmon, Admx., etc. v. Mundy,* 125 W. Va. 591, 25 S. E. 2d 636, we held: "1. The question whether the negligence of two or more persons was concurrent and, taken together, proximately caused or contributed to the injury of another is, as to all questions of fact, one for jury determination, and, in such a case, a jury verdict thereon will not be disturbed where there is substantial evidence to support it." See *Roush, Admr. v. Johnson,* 139 W. Va. 607, 80 S. E. 2d 857; *Brewer v. Appalachian Constructors, Inc.,* 135 W. Va. 739, 65 S. E. 2d 87.

On direct examination, William H. Dyer, an employee of the bus company, was asked: "Was the Osgood Bus Company paid for the damages sustained by that accident?", to which the witness replied: "Mr. Dayton's Company paid for all our damages unquestionably". Counsel for the defendant administrator thereupon moved that a juror be withdrawn. On

cross-examination counsel for the defendant administrator asked: "As a matter of fact your Company, Agents of your Company, went out and saw some of these witnesses and bought Releases from them for injuries sustained in this accident and paid them for those Releases, is that not true?", to which the witness replied: "Yes. Your Company and my Company got together here in Keyser the day following the accident. They both suggested to take half of the passengers on the bus and contact them to see what injuries, if any, and get whatever releases were necessary, and to me your Company and my Company did that together". In the closing argument to the jury counsel for plaintiff stated: "What is it going to take to teach this insurance company a lesson?" Apparently counsel making the statement immediately corrected the statement so as to make it refer to the Osgood Bus Company, Inc., instead of to an insurance company. After the argument was concluded, before the jury had retired to the jury room, out of the presence of the jury, objection to the statement quoted was made, and a motion was made to withdraw a juror. The objection and motion were overruled.

The contentions are made by the respective parties that the questions and answers quoted above were understood by the jury to refer to insurance; that by cross-examination any error was waived, even though so understood by the jury; and that the statement of counsel was prejudicial error, since the question of insurance had been brought to the attention of the jury by plaintiff; and that the statement of counsel so made, being immediately corrected, could not have prejudiced the jury.

In *Wilkins v. Schwartz,* 101 W. Va. 337, 132 S. E. 887, we held: "1. The jury should not in any manner be apprised of the fact that the defendant is protected by indemnity insurance, and such action on the part of plaintiff or his counsel will ordinarily constitute reversible error, notwithstanding the court may

instruct the jury not to consider the same in arriving at a verdict." See *Bradfield v. Board of Education of Pleasants Co.*, 128 W. Va. 228, 36 S. E. 2d 512; *Lynch v. Alderton*, 124 W. Va. 446, 20 S. E. 2d 657; *Fleming v. Hartrick*, 105 W. Va. 135, 141 S. E. 628; *Atkins v. Bartlett*, 101 W. Va. 263, 132 S. E. 885; *Moorefield v. Lewis*, 96 W. Va. 112, 123 S. E. 564. In certain circumstances, where it is clear that no prejudice could have developed, the general rule that the mentioning of insurance before the jury in such a trial constitutes prejudicial error has been somewhat qualified. See *Butcher v. Stull*, 140 W. Va. 31, 82 S. E. 2d 278.

We are of the view that the point of error raised by defendants relating to "teaching the insurance company a lesson" is well taken, and requires the setting aside of the verdict. It may be cogently argued that the testimony quoted above could have related only to interested insurance companies and, coupled with the statement made in the closing argument, informed the jury that the parties, or some of them, carried insurance covering the damages occasioned by the accident in question. Though the statement appears to have been made inadvertently, its innocence, or immediate correction by the attorney, would not prevent the jury from believing that insurance existed, or from being prejudiced thereby. Even the instruction of the court could not have had that effect. *Wilkins v. Schwartz, supra.* We can not say that no prejudice resulted from the remarks.

In 88 C.J.S., Trial, 180, it is stated: "Unless the matter is within the issues and the evidence, it is generally held to be highly improper for counsel to advise the jury directly or by insinuation that the defendant is covered by insurance or has indemnity against any verdict rendered." In the instant case, the statement of counsel complained of, "by insinuation", at least, informed the jury that the defendants were "covered by insurance" as to the injuries for which plaintiff sued.

Numerous contentions are made as to the action of the trial court in giving and refusing instructions. Insofar as appears material, in view of the present record, the propriety of such actions of the trial court depends largely, if not solely, on questions of the nature or theories of the liabilities of the different defendants. What has been said above, we think, sufficiently answers questions raised as to the giving or refusing of instructions.

The judgment of the Circuit Court of Mineral County complained of is reversed, the verdict of the jury set aside, and defendants are granted a new trial.

*Reversed; verdict set aside; new trial awarded.*

BROWNING, PRESIDENT, dissenting:

I agree with the law enunciated in all six syllabus points, but disagree with the application of the 6th Syllabus Point to the facts in this case.

There were two defendants, and, .from the beginning of the trial, each contended to the court and jury that the plaintiff should recover, but each maintained that the plaintiff should recover from the other defendant. Actually, the trial developed primarily into a contest between the two defendants, each attempting to shift liability to the other. As related in the majority opinion, it was made clear to the jury that "Mr. Dayton's Company" paid for the damages suffered by the Osgood Bus Lines, Inc. Then on cross-examination, it was developed that the "agents" of "Your Company and my Company got together here in Keyser the day following the accident.", and contacted the passengers with reference to their injuries and attempted to secure releases. The witness said: "* * * your Company and my Company did that together." I agree with the statement of the trial judge in overruling the motion to set aside the verdict when he said: "* * * I might say that this jury would be terribly stupid if they didn't know there was insurance on both sides."

It is obvious that the jury understood that counsel for the plaintiff in his closing argument to the jury meant Osgood Bus Lines, Inc., and not an insurance company when he said: "What is it going to take to teach this insurance company a lesson?" His argument was directed against the practice of the Bus Company of violating the statute by parking on a bridge to discharge passengers, a practice which the evidence shows it had followed for several years. Furthermore, counsel immediately stated that he meant the Osgood Bus Lines, Inc., and not an insurance company. This Court has not peremptorily found reversible error in every case where the word "insurance" has been used. In *Moorefield, Admr. v. Lewis,* 96 W. Va. 112, 123, S. E. 564, counsel for the plaintiff in his opening statement to the jury said: "I might say that the defendant, Mr. Lewis, has insurance." Upon prompt objection, the trial court ruled the statement improper and informed the jury it should not consider it. There was a verdict for the plaintiff which was affirmed by this Court. See also *Butcher v. Stull,* 140 W. Va. 31, 82 S. E. 2d. 278, and *Adkins v. Smith,* 142 W. Va. 772, 98 S. E. 2d. 712. All of the cases decided by this Court upon this question, prior to the date of the decision in *Butler v. Stull,* 140 W. Va. 31, 82 S. E. 2d. 278, are collected in the opinion of that case. It will be observed from these cases that, where the word "insurance" is used in the trial of a case so as to inform the jury that one of the parties is protected by insurance, the Court will closely scrutinize the entire proceedings to determine the effect, if any, upon the verdict, and if the slightest inference of prejudice appears, the verdict will be set aside and a new trial awarded, but, where a plain case for recovery has been established by the whole evidence and there is nothing to indicate that the jury was improperly influenced thereby, the rule is otherwise. I agree with the statement in the majority opinion that: "* * * We find nothing in the amount of the verdict returned to indicate any prejudice or improper motive on the part of the jury."

The doctrine of harmless error is deeply imbedded in our jurisprudence, and this Court should not be alerted to discover loopholes in order that the guilty may escape their just deserts in criminal cases, or that a plaintiff or a defendant should be denied the rights which have accrued to him by virtue of having secured, by a fair trial, a jury verdict in his favor, especially when such a verdict has the approval of the trial court by judgment having been entered upon it.

I dissent and would affirm the judgment of the Circuit Court of Mineral County.