**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

### FOR THE FOURTH CIRCUIT

PAUL E. FISHER; CAROL S. FISHER,
            *Plaintiffs-Appellees,*

v.

AMERICAN GENERAL FINANCE
COMPANY, a corporation; AMERICAN
GENERAL HOME EQUITY,
INCORPORATED, a corporation,
            *Defendants-Appellants.*

No. 01-2511

PAUL E. FISHER; CAROL S. FISHER,
            *Plaintiffs-Appellees,*

v.

AMERICAN GENERAL FINANCE
COMPANY, a corporation; AMERICAN
GENERAL HOME EQUITY,
INCORPORATED, a corporation,
            *Defendants-Appellants.*

No. 02-1250

Appeals from the United States District Court
for the Southern District of West Virginia, at Charleston.
Elizabeth V. Hallanan, Senior District Judge.
(CA-00-350-2)

Argued: October 31, 2002

Decided: December 11, 2002

Before WILKINS, Circuit Judge, Frank J. MAGILL,
Senior Circuit Judge of the United States Court of Appeals
for the Eighth Circuit, sitting by designation, and
Henry E. HUDSON, United States District Judge
for the Eastern District of Virginia,
sitting by designation.

Reversed in part and vacated and remanded in part by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Robert Reynold Merhige, Jr., HUNTON & WILLIAMS, Richmond, Virginia, for Appellants. Bren Joseph Pomponio, MOUNTAIN STATE JUSTICE, INC., Charleston, West Virginia, for Appellees. **ON BRIEF:** John Charles Thomas, HUNTON & WILLIAMS, Richmond, Virginia; Stephen M. Nickelsburg, HUNTON & WILLIAMS, Washington, D.C.; T. Thomas Cottingham, III, HUNTON & WILLIAMS, Charlotte, North Carolina, for Appellants. Daniel F. Hedges, MOUNTAIN STATE JUSTICE, INC., Charleston, West Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

American General Finance Company and American General Home Equity, Inc. (collectively, "American General") raise several challenges to a judgment arising out of a loan transaction. We reverse in part, vacate in part, and remand.

I.

In March 1997, Paul E. and Carol S. Fisher refinanced their home mortgage with a $28,990.36 loan from American General ("the American General loan"). In conjunction with the loan, the Fishers intended to divide the property on which their house was situated into three parcels, with their home in the center parcel ("the Middle Tract"). The parties agreed that the Middle Tract, which appraised at $68,000,

would secure the loan. A local attorney was then hired to prepare deeds vesting ownership of the other two parcels in the Fishers and one of their sons in joint tenancy.

When this work was completed, Pam Elliott,[1] an American General branch manager, memorialized American General's security interest by preparing a deed of trust. The Fishers later realized that Elliott had copied the description of the entire original property from the Fishers' title report to the loan documents, instead of copying the description of the Middle Tract from one of the new deeds.

In March 2000, the Fishers refinanced the American General loan with Wesbanco Bank, Inc. ("the first Wesbanco loan"). At that time, the Fishers learned that since American General had not informed them that they had three days in which to rescind the American General loan, by law the rescission period had extended to three years. *See* 15 U.S.C.A. § 1635(a), (f) (West 1998). The Fishers rescinded that loan on March 27, 2000—just within the three-year period—by faxing notice to American General. In that notice, the Fishers requested that American General calculate their payoff amount in four days. American General did not respond during that period; by law, it had 20 days to respond, *see* 15 U.S.C.A. § 1635(b) (West 1998). Nevertheless, the Fishers closed on the first Wesbanco loan on March 31, 2000. The amount of the loan was $36,000, with $26,889.16 held by Wesbanco in escrow to repay American General.

Even after the loan closed, however, American General refused to take steps to reflect the release of its lien and failed to provide the Fishers with an exact payoff amount. Finally, on May 2, 2000, 35 days after receiving notice of the Fishers' rescission, American General sent the Fishers a letter offering to rescind the loan if the Fishers paid $16,771.68, which was the original principal amount of the loan less the total of the payments the Fishers had already made.

The same day that the letter was sent, the Fishers filed suit against American General. Two of their claims ("the TILA claims") asserted that American General violated the Truth in Lending Act ("TILA") by

---

[1]Prior to trial, Elliott changed her surname to Perry.

failing to notify them of their three-day right of rescission and by failing to release the lien within 20 days of receiving the Fishers' rescission notice. *See id.* § 1635(a), (b). A third claim ("the bad faith claim") alleged that American General breached its contractual duty of good faith and fair dealing by intentionally misidentifying the property securing the loan in the deed of trust. A fourth claim ("the fraud claim") alleged that American General fraudulently induced the Fishers into entering the loan transaction.

Despite American General's offer to release its lien if the Fishers tendered $16,771.68, American General failed to comply with its legal duty to take the steps needed to demonstrate release of its security interest even after the Fishers filed suit. *See id.* § 1635(b) (requiring creditor to take steps to demonstrate release of security interest within 20 days of debtor's request for rescission). Accordingly, on May 25, 2000, in order to avoid continuing to pay interest on the money the Fishers had borrowed to pay off American General, the Fishers paid off the $36,000 first Wesbanco loan and obtained a second mortgage from Wesbanco of approximately $9,000 ("the second Wesbanco loan").[2]

The Fishers also received six monthly default statements at their home after filing suit against American General. The Fishers asserted in an amended complaint that these statements were sent in violation of W. Va. Code Ann. § 46A-2-128(e) (Michie 1999), which prohibits a debt collector from communicating directly with a consumer when it appears that the consumer is represented by counsel ("the WVC-CPA claim").

Following discovery, both parties moved for summary judgment. The district court concluded as a matter of law that American General had violated TILA both by failing to notify the Fishers of their three-day right of rescission and by failing to demonstrate release of its lien within 20 days of receiving the Fishers' rescission notice. The court also ruled, however, that as a matter of equity, the Fishers' right of rescission was conditioned upon their tendering of $15,837.48, which represented the principal remaining on the loan less the interest and

---

[2]This loan was a second mortgage because American General had not yet taken steps to reflect the release of its security interest.

closing costs the Fishers had paid. The court further ordered American General to pay a $2,000 statutory penalty under TILA. Finally, the court granted summary judgment to American General on the fraud claim and ruled that the Fishers could not recover punitive damages on their remaining causes of action. The court therefore ordered a trial as to actual damages on the TILA claims and both liability and damages on the bad faith and WVCCPA claims.

Prior to trial, American General moved *in limine* to exclude the testimony of Troy Mynes. Mynes was a former American General employee who had been deposed for discovery in another suit shortly after the present lawsuit was filed. The Fishers sought to elicit testimony from Mynes that Elliott and other American General employees had fabricated personal property on some loan applications in order to have those applications approved. American General maintained, *inter alia*, that Mynes' testimony was irrelevant character evidence. The district court disagreed and held the testimony admissible to show that Elliott's inclusion of all of the Fishers' property in the deed of trust was done in bad faith and that American General had a pattern and practice of such actions.

During trial, Mynes failed to appear in response to a subpoena. Counsel for the Fishers represented to the court that Mynes had recently suffered a herniated disk. Counsel suggested that excerpts from Mynes' discovery deposition taken in the unrelated suit be read into the record. American General objected, arguing that it had not had an adequate opportunity to cross-examine Mynes in the prior case. The court overruled this objection, however, and the excerpts were read into the record. They included Mynes' testimony (1) that in order to qualify Mynes for a loan for which he had applied, Pam Elliott falsified his loan application to make it appear that he owned personal property that he did not really own; (2) that Elliott subsequently told him that she would not be punished for the fabrication because no one would ever find out; (3) that fabricating property on loan applications in order to qualify the applicants happened on "numerous" occasions at American General, J.A. 239; and (4) that although Mynes did not know whether it was American General's "policy" to qualify people for loans by falsifying their applications, he "kn[e]w that's what they did," *id.* at 241.

On the issue of damages, the Fishers sought compensation for damage to their credit and for expenses they incurred with regard to both Wesbanco loans. They also sought to recover for emotional distress. The Fishers testified that American General's actions caused them "stress," "agony," and "worry" because they were concerned American General would foreclose on their home. *Id.* at 115, 182. Mrs. Fisher further testified that she developed shingles, and that the cause "had to be" the stress caused by American General's actions. *Id.* at 115.

Following the parties' presentation of their cases, American General moved for judgment as a matter of law on several issues. As is relevant here, American General maintained that the Fishers had failed to present sufficient evidence that American General breached its duty of good faith and that its actions caused the Fishers emotional distress. American General also challenged the sufficiency of the Fishers' evidence relating to several injuries for which they sought damages on their TILA claims. The district court denied the motion.

Attempting to capitalize on the admission of Mynes' testimony, counsel for the Fishers argued to the jury that American General had built its business "with shady practices and questionable conduct," and by "taking advantage" of relatively uneducated people. *Id.* at 316. Counsel asked the jury to return a verdict that "tells American General that this is not how you treat people." *Id.* at 325. And on reply, counsel stated, "You heard Troy Mynes, they've done this thing before; they will continue to do it again, unless they know that they have to compensate people for the harm that they caused." *Id.* at 342.

The jury found in favor of the Fishers on all counts, awarding $7,500 in actual damages on the TILA claims, $200,000 on the bad faith claim, and $35,000 on the WVCCPA claim. The district court then imposed $15,000 in civil penalties under the WVCCPA. American General subsequently renewed its motion for judgment as a matter of law and alternatively moved for a new trial or at least a remittitur.

During the pendency of these motions, the district court awarded the Fishers $57,188 in attorneys' fees and costs. The court then denied American General's motion for judgment as a matter of law

but reduced the bad faith verdict from $200,000 to $26,534 on remit-
titur.

## II.

American General argues that the district court abused its discre-
tion in admitting the excerpts from Mynes' deposition because the
testimony was irrelevant and unduly prejudicial. *See United States v.*
*Van Metre*, 150 F.3d 339, 349 (4th Cir. 1998) (stating standard of
review). We agree.

The Federal Rules of Evidence provide that evidence of prior bad
acts "is not admissible to prove the character of a person in order to
show action in conformity therewith." Fed. R. Evid. 404(b). However,
it may "be admissible for other purposes, such as proof of . . . intent
. . . or absence of mistake or accident." *Id.* In order for evidence of
prior bad acts to be admissible under Rule 404(b) to show a pattern
tending to refute a claim of mistake, the prior acts "must be similar
in nature to" the act at issue at trial. *United States v. Queen*, 132 F.3d
991, 996 (4th Cir. 1997). The similarity of the acts is what distin-
guishes evidence "introduced to show a particular intent" from evi-
dence "introduced only to show a much more generalized intent,"
such as the intent to commit illegal or dishonest acts. *Id.* The former
may be admissible, while the latter is not. *See id.*

Here, the dissimilarity between Elliott's and American General's
alleged prior acts and Elliott's incorrect description of the property
securing the loan demonstrates that the evidence of the prior acts was
inadmissible. Mynes' testimony at most tended to show that Elliott
and American General regularly fabricated personal property on loan
applications in order to qualify applicants for loans. Here, however,
the Fishers had already qualified for their loan. Thus, any dishonesty
by Elliott here would have served an entirely different goal.[3] In light

---

[3]Although the misstatement in the Fishers' deed of trust and the fabri-
cations described in the Mynes deposition all involved security for loans,
these statements are not similar in nature. The statement in the deed of
trust operated to the Fishers' detriment. By contrast, the false statements
described by Mynes apparently assisted applicants in obtaining loans for
which they may not have been eligible.

of this critical difference, Mynes' testimony at most tended to prove Elliott's or American General's "generalized intent" to commit dishonest acts when it served their interests, rather than the "particular intent" to take a security interest for American General in more property than the Fishers had authorized. *Id.*; *cf. Coast-to-Coast Stores, Inc. v. Womack-Bowers, Inc.*, 818 F.2d 1398, 1403-04 (8th Cir. 1987) (holding that evidence of prior misrepresentations was properly excluded when acts were "different in kind" from the acts giving rise to the suit). The court therefore abused its discretion in admitting the evidence.

Moreover, the erroneous admission of the deposition excerpts was not harmless. *See* 28 U.S.C.A. § 2111 (West 1994) (stating that appellate court may not reverse judgment based on errors that do not affect substantial rights). As we will discuss in greater detail, there simply was no other evidence that could support a verdict for the Fishers on their bad faith claim. And, the Fishers relied heavily on Mynes' testimony in closing argument, in which they alleged that American General had a pattern and practice of dishonesty that had to be stopped. Indeed, the size of the damages verdicts—when viewed in conjunction with the Fishers' modest damages evidence—indicates that American General was prejudiced by the admission of this evidence. We therefore vacate the judgment against American General.[4]

### III.

American General next contends that the district court erred in denying its motion for judgment as a matter of law. We review the denial of a motion for judgment as a matter of law de novo. *See Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir.), *cert. denied*, 122 S. Ct. 342 (2001). We must view the evidence in the light most favorable to the Fishers, the non-movants, and draw all reasonable infer-

---

[4]The size of the verdicts also strongly supports American General's argument that the verdicts were the result of passion and prejudice, and therefore that the district court abused its discretion in not granting a new trial on this basis. We need not decide this issue, however, in light of our vacatur of the judgment.

Because we vacate the judgment, we also vacate the award of attorneys' fees and costs.

ences in their favor without weighing the evidence or assessing the witnesses' credibility. *See Sales v. Grant*, 158 F.3d 768, 775 (4th Cir. 1998). Judgment as a matter of law is proper only if "there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### A.

American General first claims that the Fishers presented insufficient evidence that they were entitled to actual damages on the TILA claims. To establish actual damages from a TILA violation, a plaintiff must prove that the violation proximately caused his damages. *See Peters v. Jim Lupient Oldsmobile Co.*, 220 F.3d 915, 917 (8th Cir. 2000). The Fishers have not claimed any injury from American General's first violation, its failure to disclose the Fishers' rescission rights. Accordingly, we focus on the question of whether there was sufficient evidence of injury resulting from the second violation, American General's failure to take actions to reflect the release of its lien within 20 days of the Fishers' cancellation notice. We conclude that there was.

The Fishers presented testimony that had American General demonstrated release of its lien within the 20-day period, the second Wesbanco loan would have been a first mortgage rather than a second mortgage, and their interest rate would have been at least one-and-one-quarter percent lower. American General asserts that the increased interest was not recoverable as damages because the Fishers would have incurred liability for that interest even had it demonstrated release of the lien, because the Fishers would have needed to borrow money to repay the American General loan. This argument misses the mark. Had American General demonstrated release of the lien within the 20-day period, any money that the Fishers would have borrowed would have been at the first-mortgage rate, rather than the higher second-mortgage rate, because Wesbanco would have known it was the only lender with a lien on the property.

American General also argues that the Fishers cannot recover costs associated with the second Wesbanco loan because that loan was not obtained for the purpose of paying off American General. However, it is not the purpose of the second Wesbanco loan that serves as the

causal link between the increased interest and the TILA violation. The reason that the extra interest may be recoverable is that American General's failure to timely demonstrate release of the lien caused the Fishers to pay second-mortgage rates for any money they borrowed using their house as collateral—regardless of the purpose for which the loan was obtained. We therefore conclude that the district court correctly denied American General's motion for judgment as a matter of law on the TILA damages claim.[5] Accordingly, we remand for further proceedings regarding this claim.

B.

American General also maintains that the district court erred in denying its motion for judgment as a matter of law on the Fishers' contractual bad faith claim. In light of our conclusion that the Mynes deposition excerpts were inadmissible, we agree. *See Weisgram v. Marley Co.*, 528 U.S. 440, 457 (2000) (holding that courts of appeals are authorized to direct district courts to enter judgment as a matter of law when there is insufficient evidence to support the jury verdict once erroneously admitted evidence is excised from the record).

Nothing in the record showed that Elliott had any motive to claim a security interest greater than what was authorized by the Fishers, because the amount loaned was less than half the appraised value of the Middle Tract alone. Indeed, American General presented unrebutted testimony from one of its former managers that American General had no motive to obtain additional security, for this very reason.[6] Without any evidence that Elliott had a motive to misidentify the secured property in the deed of trust, a conclusion that her overbroad

---

[5]Because we conclude that the evidence was sufficient to support a damages verdict for the TILA cause of action, we do not address the Fishers' other arguments that American General was not entitled to judgment as a matter of law on this claim.

[6]At oral argument, the Fishers suggested that the record contained testimony that a foreclosure sale might bring less than the appraised value of the property. Although the former American General manager did agree on cross-examination that sometimes properties are sold at foreclosure for far less than their appraised value, he would not agree that they sell for "as little as 50 or 60 percent of [their] market value." J.A. 278.

description of the secured property was the result of intentional deception, rather than simple carelessness, could only be based on speculation.[7] *Cf. Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.*, 160 F.3d 177, 181-82 (4th Cir. 1998) (holding that conclusion that failure of former employer to complete and return reference form sent by former employee was due to retaliatory animus rather than "slopp[iness]" would be speculative absent other evidence of retaliatory animus). Accordingly, American General is entitled to judgment as a matter of law on the bad faith claim.

### C.

American General also argues that the Fishers' damages evidence on the WVCCPA claim was insufficient. A plaintiff may recover damages under West Virginia law for injuries proximately caused by the defendant's negligent violation of a statute. *See Flanagan v. Mott*, 114 S.E.2d 331, 335 (W. Va. 1960). However, the only injury the Fishers claimed as the result of American General's sending the default notices directly to them was emotional distress, and American General argues that the Fishers' emotional distress evidence was insufficient to justify a damages award. We agree.

Although the Fishers testified that American General's refusal to release the lien and its default notices caused them concern that American General would foreclose on their house, no evidence showed that their anxiety was any greater as the result of American General's sending the default notices directly to them rather than communicating through their counsel, as the statute required. Accordingly, the Fishers' evidence was insufficient to support a damages award on this claim, and American General was entitled to judgment as a matter of law.

---

[7]Mrs. Fisher testified that Elliott had the Fishers sign the deed of trust before Elliott filled in the description of the property securing the loan. The Fishers argue that a fair inference from this procedure was that Elliott did not want the Fishers to see her falsification. However, absent evidence that Elliott had a motive to describe the loan security incorrectly, it cannot be reasonably inferred that the misdescription was intentional merely because it was facilitated by the procedures Elliott followed during this transaction.

## IV.

For the aforementioned reasons, we reverse the denial of judgment as a matter of law on the bad faith claim and the WVCCPA damages claim, vacate the balance of the judgment in favor of the Fishers, and remand for further proceedings.

*REVERSED IN PART; VACATED AND REMANDED IN PART*